CHARLES E. WHITTAKER, as Administrator, etc., Respondent, v. THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

A railroad company does not discharge its whole duty to the public or its servants by merely framing and publishing proper rules for the conduct of its business and the guidance and control of its servants; it is also required to exercise such a supervision over them and the prosecution of its business as to have reason to believe that it is being conducted in pursuance of such rules.

Its duty, in respect to the employment of servants, is not satisfied by the hiring of capable and competent persons in the first instance; it must also exercise such an oversight and supervision of them that, if a

servant becomes habitually or notoriously incompetent or unfit, from carelessness or bad habits, to perform his duties, it will discover and guard against it, and if it fails to do this it is liable to another servant for injuries caused by the negligent acts of the incompetent servant.

It is not necessary that such incompetency should be brought to the knowledge of the company ; if it continued for such a length of time that a careful and diligent supervision would have discovered it, it is chargeable with notice of its existence.

In an action to recover damages for alleged negligence, causing the death of W., plaintiff's intestate, it appeared that the death resulted from a collision in the night-time, between a freight train upon which W. was employed as fireman and an engine left standing on defendant's main track, in violation of one of its rules, by its engineer while waiting for orders. There was evidence that said engineer and other engineers had for at least a year been in the habit of frequently disobeying said rule. The complaint was dismissed. *Held*, error; that the question of defendant's negligence should have been submitted to the jury.

The freight train had been ordered to run into the yard at the station where the accident happened, ahead of the schedule time, and was running at the time from seven to ten miles an hour; the night was dark and foggy; the engineer of the engine drawing the train testified that he gave the usual signal of the train's approach by a sharp whistle about a half mile from the yard and rang his bell continuously; that he kept a sharp lookout for objects on the track ahead; that the stationary engine had no light which could be seen and he did not see it until he arrived within sixty or seventy feet, when he discovered it by the reflection of his own head-light, when it was too late to stop the train or for him or W., who was engaged in the performance of his duties, to escape. *Held*, that neither the engineer nor K. were chargeable with negligence.

It was claimed on the part of defendant that the company's rules forbid a train from running through a yard at a greater speed than four miles an hour. *Held*, that assuming there was evidence of such a rule, it was not clear that the rate of speed, or any want of care or caution in running the freight train contributed to the accident; and that the question should have been submitted to the jury.

(Argued April 30, 1891; decided June 2, 1891.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made November 25, 1890, which reversed a judgment entered upon a decision of the court on trial at Circuit, dismissing the complaint, and reversed an order denying a motion for a new trial and granted a new trial.

This action was brought to recover damages for the killing of Eugene K. Whittaker, plaintiff's intestate, through the alleged negligence of defendant.

The facts, so far as material, are stated in the opinion.

*Edwin Young* for appellant. There was no proof of negligence in the absence of a head-light on the locomotive. (43 N. Y. 123, 127–129; 19 id. 127; 105 id. 26; 56 id. 2; 98 id. 562; 92 id. 224; 103 id. 581; 197 U. S. 454.) There is no evidence from which a jury could infer negligence in retaining an incompetent employe. (89 N. Y. 470; 8 id. 175; 83 id. 7; 25 id. 566; 39 id. 468, 478.) There was an entire absence of proof of negligence on the part of the defendant. (98 N. Y. 562; 85 id. 61; 100 id. 272; 89 id. 470; 105 id. 26; 76 id. 131; 83 id. 7.) The proof fails to show express or implied knowledge, on the part of defendant, of the alleged custom. Such knowledge must be proved before the company can be held. (89 N. Y. 470; 8 id. 175; 83 id. 7; 25 id. 566; 39 id. 468, 478; 34 Alb. L. J. 415; 85 N. Y. 62; 81 id. 516; 101 id. 607; 105 id. 159; 84 id. 77.) The alleged negligence was not the proximate cause of the injury. (39 Hun, 434; 55 N. Y. 608; 35 id. 210; 32 Alb. L. J. 448; 1 Hun, 510–572; 31 id. 491; 105 U. S. 249; 19 Johns. 224; 64 Ill. 522; 77 N. Y. 90; 40 Hun, 389; 105 N. Y. 202; Whart. on Neg. 60, 112–115, 135, 137–139.) Incompetency cannot be proved by a single prior act of negligence, however gross, and never by the act itself which constitutes the cause of action. (59 N. Y. 356; 55 id. 579.)

*Louis Marshall* for respondent. It was the duty of the defendant to employ a safe and competent engineer to operate its locomotive, and although Dunbar may have been competent when employed; he subsequently became careless and reckless in the discharge of his duties, by habitually violating the rules promulgated by the defendant, for the safety of its employes, and it was for the jury to say whether the defendant had constructive notice of such fact, and whether the defendant, by

thereafter continuing him in its employ, became chargeable with his negligence. (*Newell* v. *Ryan*, 40 Hun, 286 ; 116 N. Y. 686; *Mann* v. *D. & H. C. Co.*, 91 id. 500; *Laning* v. *N. Y. C. R. R. Co.*, 49 id. 521; *Flike* v. *B. & A. R. R. Co.*, 53 id. 529; *Chapman* v. *E. R. Co.*, 55 id. 579; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 id. 356; Wood on Mast. and Serv. [2d ed.] § 418; *Gilman* v. *E. R. Co.*, 10 *Allen*, 233; 13 id. 433; *Blake* v. *M. C. R. R. Co.*, 70 Me. 60; *C., etc., R. R. Co.* v. *Doyle*, 18 Kan. 58; *M., etc., R. R. Co.* v. *Smith*, 59 Ala. 245; *M. C. R. R. Co.* v. *Gilbert*, 46 Mich. 176; *T. M. R. R. Co.* v. *Whitmore*, 58 Tex. 376; *Senior* v. *Ward*, 1 El. & El. 385; *Lyons* v. *N. Y. C. & H. R. R. R. Co.*, 39 Hun, 385; *Elwood* v. *Western Union Tel. Co.*, 45 N. Y. 549.; *Wohlfahrt,* v. *Beckert,* Id. 490; *Becker* v. *Koch,* 104 id. 394.) The defendant was guilty of negligence in requiring Dunbar to proceed to Quaker Street with a locomotive unprovided with a head-light upon its front, in violation of its own rules, and under circumstances which rendered the use of such locomotive dangerous. (*Smedis* v. *B. & R. B. R. Co.*, 88 N. Y. 13; *Johnson* v. *H. R. R. R. Co.*, 20 id. 73; *Cheney* v. *N. Y. C. & H. R. R. R. Co.*, 16 Hun, 415; *P. C. Co.* v. *Conlan,* 101 Ill. 93; *Kain* v. *Smith,* 80 N. Y. 375; *Gottlieb* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 462; *Ellis* v. *N. Y., L. E. & W. R. R. Co.,* Id. 546; *Stringham* v. *Stewart,* 100 id. 516; *Hough* v. *R. Co.,* 100 U. S. 213; *Kirkpatrick* v. *N. Y. C. & H. R. R. R. Co.,* 79 N. Y. 240; *Fuller* v. *Jewett,* 80 id. 46; *Crispin* v. *Babbitt,* 81 id. 521; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549; *Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 id. 374; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 209.) Assuming that Dunbar, Bacon and the fireman and brakeman on engine 82 were guilty of negligence, which co-operated in bringing about the accident which resulted in the death of plaintiff's intestate, yet that fact does not debar plaintiff from recovering, since the negligence of the defendant was one of the proximate causes leading to such accident. (*Cone* v. *D., L. & W. R. R. Co.*, 81 N. Y. 209; *Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 id. 557; *Ring* v. *City of*

*Cohoes*, 77 id. 83 ; *Ehrgott* v. *Mayor, etc.*, 96 id. 283 ; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 id. 566.) The plaintiff's intestate was in no manner guilty of contributory negligence. (*Strong* v. *B. & A. R. R. Co.*, 58 N. Y. 56 ; *Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 id. 199.)

RUGER, Ch. J. The appeal in this case was taken by the defendant, upon the usual stipulation, from an order of the General Term reversing a judgment dismissing the complaint and directing a new trial. The complaint was dismissed by the trial court upon the alleged ground that the evidence failed to show negligence on the defendant's part, and also that the plaintiff did not show that his intestate was free from contributory negligence. Upon appeal to the General Term, they held that there was evidence sufficient to support a verdict for the plaintiff on both grounds, and that the dismissal of the complaint was, therefore, erroneous. We agree with the conclusion reached by the General Term. There was evidence in the case from which the jury could properly have found that the injuries received by plaintiff's intestate were occasioned by the negligence of the defendant. The proof showed that the accident occurred in the night-time in the defendant's railroad yard at Quaker Street, through a collision between an incoming freight train, upon which the plaintiff's intestate was employed as fireman, and an engine left standing on the main track of defendant's road, in violation of the rules of the company, by its engineer while he was waiting in the office near by for orders.

It is claimed by the defendant that the presence of the stationary engine on the track was due to the fault of its engineer, who placed it there in contravention of a rule of the company forbidding its employes from placing engines and cars on the main track, except under orders. It is conceded that this engineer had no orders to go upon the main track with his engine, and it is, therefore, claimed that the accident having occurred through the fault of a co-servant, the company is not liable.

There was evidence in the case to show that this engineer and others, for a period of at least one year, had been in the habit of disobeying this rule of the company, and violating its requirements by placing their engines upon the main track at Quaker Street and leaving them there while awaiting orders. This practice had been so frequently indulged in and had continued for such a length of time that the jury were justified in finding that it had come to the knowledge of the railroad company and was pursued by their acquiescence, or as the result of a want of vigilance in supervising the management of their road.

A railroad company does not discharge its whole duty to the public by merely framing and publishing proper rules, for the conduct of its business and the guidance and control of its servants, but it is also required to exercise such a supervision over its servants and the prosecution of its business as to have reason to believe that it is being conducted in pursuance of such rules. (*Wabash R. Co.* v. *McDaniels*, 107 U. S. 452; *Chapman* v. *Erie Rw. Co.*, 55 N. Y. 579; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 id. 356.)

Neither is its duty in respect to the employment of servants satisfied by the hiring of capable and competent persons in the first instance; but it is also required that they should exercise such an oversight and supervision of such servants, that if they afterwards become habitually or notoriously incompetent or unfit, from carelessness or bad habits, to perform their duties, this incompetency, if long continued, should be discovered and guarded against. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 521.) It is not necessary that this incompetency should be brought to the personal knowledge of the master; but if it continues for such a length of time as that a careful and diligent supervision of its business ought to bring it to its knowledge, it is chargeable with notice of its existence. It was said in *Gilman* v. *Eastern R. R. Co.* (10 Allen, 233), approved in the *Laning* case, that "This care he (the master) can and must exercise, both in procuring and keeping and maintaining such servants, structures and engines. If he knows,

or, in the exercise of due care, might have known that his servants are incompetent, or his structures or engines insufficient, at the time of procuring them, or at any subsequent time, he fails in his duty. For the management of his machinery and the conduct of his servants, he is not responsible to their fellow-servants; but he cannot avail himself of this exemption from responsibility when his own negligence in not having suitable instruments, whether persons or things, to do his work, causes injury to those in his employ." The rule in reference to constructive notice is well expressed in the case of *Hilts* v. *Chicago and Grand Trunk R. Co.* (55 Mich. 437), as follows: "A master who retains an incompetent servant in his employment, after knowledge comes to him of the unfitness of the servant for the service in which he is engaged, or of whose unfitness he might have known by the exercise of due diligence or ordinary care, is liable for injury to another servant caused by the negligent acts of the incompetent servant."

In view of these rules, it was clearly error to take this case from the jury, unless there was also evidence from which the jury were, as a matter of law, authorized to find contributory negligence on the part of the plaintiff's intestate. So far from this being the case, we are of the opinion that the undisputed proof showed that he was free from negligence. The material evidence on this question was given by the engineer in charge of the freight train, and he testifies that he received orders at Cobleskill, the last station before reaching Quaker Street, to run into the yard at that place in advance of his schedule time; that he was, accordingly, a few minutes ahead of time with his train and was running at the time he entered the yard at the rate of from seven to ten miles an hour; that the night was dark and foggy and it was impossible to see a dark stationary object on the tracks in time to avoid a collision with it; that he gave the usual signal about half a mile from the yard, by a sharp whistle, of the approach of his train and rang his bell continuously; that he kept a sharp look-out for objects on the track ahead of him as he ran

into the yard, and saw nothing; that the stationary engine had no light upon it that could be seen, and he did not see it until he arrived within sixty or seventy feet of the engine, when it was discovered by the reflection of his own head-light upon it. He further testified that the last he saw of Whittaker he was getting coal from the tank to throw into the furnace. This was immediately after he saw the engine and there was then not sufficient time to enable either Whittaker or himself to escape from the train. It is quite difficult to see what measures either the engineer or Whittaker could have taken to avoid the collision. They were under orders to run into the yard in advance of time and had a right to assume that the defendant had taken such precautions as would relieve them from any hazard of collision in running into the Quaker Street yard. They were both engaged in the discharge of their customary duties and exercised all of the precaution in entering the yard that was required by the obligations of ordinary prudence and care, and are not justly chargeable with negligence in running into the yard as they did. The only suggestion of any want of care on their part is predicated upon the assumption that the train was running at a prohibited rate of speed.

It is claimed that there is proof in the case that trains are prohibited from running through a yard at a greater rate of speed than four miles an hour. No such rule was introduced in evidence; but there was a rule proved that " all engineers must approach and pass all stations cautiously, whether they are to stop or not." One of the railroad employes did, however, testify that he had previously sworn that a train could not run past a station at a greater rate of speed than four miles an hour. Assuming, however, that there was evidence of such a rule, it is not certain that the rate of speed of the incoming train was the cause of the accident. It is perfectly obvious that, whatever the rate of speed, whether four or seven miles an hour, a collision with the stationary engine on the same track was inevitable, and the danger to those exposed to its effect unavoidable.

It is, therefore, quite immaterial whether the fireman was chargeable with the engineer's carelessness, or want of skill, or not, as it was quite certain that the jury could, upon the evidence, find that there was no such want of care and caution in running the freight train as contributed to the accident.

We think, in view of all the facts in the case, that it was the duty of the trial court to have submitted the case, on both of its branches, to the jury, and that it erred in withdrawing it from them.

The order of the General Term should, therefore, be affirmed and judgment absolute ordered for the plaintiff, with costs.

All concur, except PECKHAM, J., not sitting.

Order affirmed and judgment accordingly.