DANIEL SCHMEER, AS ADMINISTRATOR OF DANIEL SCHMEER, JR., DECEASED, RESPONDENT, *v.* THE GAS-LIGHT COMPANY OF SYRACUSE, APPELLANT, IMPLEADED WITH ANOTHER, DEFENDANT.

*Negligence — liability of a gas-light company for an explosion inside of a building — negligence of an employee of the owner of the building — rules of a gas company to cover possible sources of accident.*

It is provided, by sections 6 and 8 of chapter 311 of the Laws of 1859, that upon the application in writing of the owner or occupant of a building within one hundred feet of a gas-main a gas company shall supply him such gas as may be required to light the premises, and that the company, by its duly authorized agent, may at all reasonable times go upon the premises to inspect and examine meters and pipes and to ascertain the quantity of gas consumed.

A gas-light company, pursuant to such an application, led from its main in the street to the inside of the cellar wall of a new building a service pipe, which was left in proper condition with the gas shut off at its inner end. A shut-off cock was also placed at the curb, which worked by a key, gas-fitters being allowed to have keys to enable them, when necessary, to shut off gas from the house.

The plan of the gas system in the house, put in for the owner by one Tiley, consisted of a long horizontal pipe in the basement, with risers, which were to be left properly capped, going independently to the different floors and apartments, the upper part of the house being designed for several families. After putting in the risers Tiley failed to cap one of them on the third floor. A few days later, the tenants of the store on the ground floor having applied to the gas company for a meter, the company demanded first a plan of the gas system, which was furnished by Tiley, and thereupon a meter was sent, and a plumber, named Leahey, employed by the tenants, connected this meter in the store with the horizontal pipe in the cellar by a new riser independent of those put in by Tiley. Leahey then turned on the gas at the curb.

A room on the third floor having become filled with gas from the riser left uncapped by Tiley, Daniel Schmeer, Jr., went into it with a lighted candle, an explosion occurred and he was killed

In an action brought against the gas company by his administrator to recover the damages resulting from its alleged neglige

*Held,* that the action could not be supported.

That the company had no control over the pipes in the building, except its service pipe, and was not charged with any duty to protect the occupants against the negligence of the owner or his agents.

That the statute did not impose any such duty.

That it was error to charge the jury that they might say whether, in the discharge of the duty of the gas company to exercise reasonable care to prevent gas from injuring persons by explosion or by inhaling, the company should not have

made a rule requiring that when a person turned on gas under such circumstances he should at the time examine outlets where meters were to be placed to see that the outlets were properly closed.

APPEAL by the defendant, the Gas-Light Company of Syracuse, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Onondaga on the 29th day of October, 1890, upon a verdict for the plaintiff for $2,000, after a trial at the Onondaga Circuit before the court and a jury; the defendant also appealed from an order of the Supreme Court, entered in the same clerk's office on the same day, denying a motion for a new trial.

*Martin A. Knapp* and *Edwin Nottingham*, for the appellant.

*Louis Marshall*, for the respondent.

MERWIN, J.

On the 19th of April, 1889, Daniel Schmeer, Jr., the plaintiff's intestate, was fatally injured by an explosion of illuminating gas in a building in Syracuse owned by George Young. The deceased lived with the plaintiff, his father, in apartments in the second story of the building, and in the evening of the day in question gas was discovered to be escaping in the third story. The attention of the deceased was called to it and he went partly up stairs and then returned and said : " I will get a light and we will find the leak and fix it until morning." Then, as Mrs. Ripple, a witness for plaintiff and one of the tenants in the third story, testifies: " Mrs. Bordner says: 'Don't take no light.' I repeated: 'Don't take no lamp, you will set us afire.' He said : 'I wont take a lamp, that will explode; I will take a candle; I have seen them test pipes with a candle; I have seen it done.'" He then got a candle and went up-stairs and the accident happened. It was afterwards discovered that the end of a gas pipe, that had been carried to the hall in the third story for the purpose of there attaching a meter, was open.

The building was a new three-story brick block. In the first story were a double store and a single one. In each of the other stories there were three apartments or sets of rooms adapted for separate use. The owner employed one Tiley, a gas-fitter and plumber of the city, to put in the gas pipes throughout the building.

One of the provisions of his contract being: "Put the joints together in red lead, all pipes to be capped, proven tight and caps left on." The pipes were so arranged that there could be separate meters for each store and apartment. A horizontal pipe was placed in the cellar in connection with the pipe coming from the street, and from this horizontal pipe risers were carried up in the partitions and let into the halls in the second and third stories, and there the ends were capped or plugged or designed to be until meters should be attached for the use of the tenants.

On the 29th of March, 1889, Mr. Young applied to the defendant, the Gas Light Company, for a service pipe into the building, and soon after the application it was put in by the company and led from the main of the company in the street to the inside of the cellar wall. It was conceded at the trial that this service pipe "was of proper size, properly put in and left in proper condition, with the gas shut off." A shut-off cock, by which the gas could be turned on or off from the buildings, was placed in this pipe at the curbstone and access was had to this stop-cock by means of a kind of a key which was operated from the surface of the street through a round iron box, having a cover which was fastened. The pipes in the building were connected with this service pipe by Tiley a few days before the accident.

On the eighteenth of April, Vinney & Krause, the occupants of the double store, applied to the gas company for a meter. The company declined to furnish it until they had received from Mr. Tiley the plans of the gas system of the building. These plans were furnished by Tiley the fore part of April, nineteenth, and then a meter was sent by the company to Vinney & Krause. The defendant Leahey was a plumber apparently in the employ of Vinney & Krause, and he, or his employees, attached the meter to the horizontal pipe in the cellar by means of a branch or riser entirely separate from the risers that went to the stories above. This being done he, or his man, turned the gas on at the stop-cock in the street. This operated not only to send gas through the meter of Vinney & Krause, but also through the horizontal pipe in the cellar and up the risers that had been carried to the second and third stories for the accommodation of meters to be thereafter placed there. The escape followed at the locality of the accident.

The gas company, in the course of its business, allowed plumbers, who put in meters that were sent by it to a building for use, to turn on the gas at the completion of their work. The plumbers had keys or instruments of their own with which they did it. When meters were put in for the first time it was not the custom of the company to make the connections. That was done by plumbers in the employ of those who wanted to use the gas.

The evidence seems to be undisputed that when plans were furnished to the gas company by the plumbers who put into the building the gas-pipes, that was understood by both parties to be a representation that the piping had been properly tested and was ready for use.

Leahey, or his employees, when they put in the meter, did not examine to see whether the outlets in the other parts of the building were closed. They seemed to act upon the theory that, after plans were furnished by Tiley to the company, and the latter furnished a meter to the occupant, they had a right to assume that the pipes in the building were all right. The verdict of the jury in favor of Leahey is to the effect that he or his agents were not guilty of any negligence. Upon the evidence there seems to be no question but that Leahey and Tiley were competent plumbers.

The court charged the jury that neither Tiley or Leahey were agents of the gas company, and that the company was not responsible for the failure of either to perform any duty he owed plaintiff's intestate; that, "if the defendant, the gas company, allowed and permitted agents employed by consumers to let on gas without sufficiently securing the outlets of pipes put in or used by such consumers, the company is not liable for the acts of such agents, or the consequences resulting therefrom;" that "the mere fact that consumers or their agents were allowed and permitted to turn on gas at the curb-stone did not make the company liable for the consequences of so doing, when the company had nothing to do, in fact, with the act of turning on the gas;" that the Gas Light Company "owed no duty to plaintiff's intestate which required it to inspect the gas-piping in buildings such as that in question, put in by a plumber employed by the owner or consumer, before allowing the gas to be let into the building, unless requested to make such inspection."

The court, however, charged that it was the duty of the company

to use reasonable care and diligence to prevent the gas from injuring persons by inhaling or explosion, and then left it to the jury to say whether, in the discharge of this duty, it ought not to have made and promulgated and insisted upon a compliance with a rule or regulation requiring that whoever turned on the gas upon an occasion like the one in controversy should, at the time, examine and see whether the outlets at the different places where meters were to be put on were properly closed. The verdict of the jury against the company in effect found that the company was negligent in the regard specified, and that such negligence produced the injury.

It seems, therefore, to have been held that the company were not bound to inspect, but that they were bound to make a rule for an inspection by the employees of the occupant or owner. There are cases where a corporation is required to make rules and regulations for the conduct of its business and the guidance and control of its servants. (*Whittaker* v. *D. and H. C. Co.*, 126 N. Y., 549.) But the rule applied here seems to go beyond the scope of those cases.

By the statute (chap. 311 of 1859, § 6), it is provided that, " Upon the application, in writing, of the owner or occupant of any building or premises within one hundred feet of any main laid down by any such gas-light company, and payment by him of all money due from him to the company, the company shall supply gas as may be required for lighting such building or premises." By section 8 of the act, the company, by its duly authorized agent, might, at all reasonable times, " enter any dwelling, store, building, room or place lighted with gas supplied by such company, for the purpose of inspecting and examining the meters, pipes, fittings and works for supplying or regulating the supply of gas, and of ascertaining the quantity of gas consumed or supplied."

The defendant here was called on to supply gas to this building, and accordingly did so by laying its service-pipe from the main to the inside of the cellar wall, and leaving it in proper condition. The company had no control of the pipes in the building beyond its service-pipe ; it had nothing to say as to how the owner should put in or locate his pipes, or fix the places for the meters, or guard against the escape of gas in the building. They could inspect for the purpose of protecting their rights as to the quantity of gas consumed or supplied. They were not charged by the statute with any

duty toward the protection of the occupants against the negligence of the agents of the owner or occupants.

The gas escaped from a portion of the pipe owned by the owner of the building, and where, in accordance with the system of pipes which he adopted, the gas was received, preparatory to use from a meter. It was in a receptacle furnished by the owner of the building, and the company had no reason to believe it was defective. On the contrary, it was assured by a competent expert, so far as the case shows, that the pipe was safe and ready for use.

If the company, in the ordinary course of its business, allow a party to take its gas into a receptacle furnished and owned by the party himself, and preparatory to its use in his building, and the company have no knowledge or any reasonable ground for believing that such receptacle is defective. I fail to see any basis for negligence.

In *Flint* v. *Gloucester Gas-Light Company* (3 Allen, 343), it was held that a gas-light company which had no charge of the pipes or fixtures inside of the meters in the buildings to which it furnishes gas, is not made responsible in damages for an injury caused by an explosion of gas in a room into which it had escaped by reason of negligence in letting it on before the end of a gas-pipe leading into the room was closed, merely by having uniformly permitted, without objection, the person, employed by gas consumers to put in such pipe and fixtures, to let on the gas after so doing.

In 2 Shearman & Redfield on Negligence (4th ed., § 697), it is said: " The mere fact of the escape of gas, washings or refuse from a place under the control of the company is sufficient evidence to raise a presumption of its negligence ; but the fact of such an escape from apparatus connecting with the property of the company, but not under its control, is not sufficient, especially if the apparatus is the property of the plaintiff. Nor will it alter the case to show that the company had access to the place where the escape occurred."

We are of the opinion that the theory upon which the jury were allowed to find the gas company negligent is not tenable, and, therefore, there must be a new trial.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order reversed and new trial granted, with costs to abide the event.