### GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. W. R. SLINKARD.

Delivered December 1, 1897.

**1. Railway Company—Rules Not Enforced Are Waived.**

Where it is customary for the employes of a railway company to violate a rule, and there is no effort made by the company to enforce it, such violation will not defeat a recovery for injuries to which an employe may otherwise be entitled, as the rule is presumed not to be intended for enforcement.

**2. Charge of Court—Negligence—Railroads.**

A charge of court in an action by a brakeman against a railway company, that if the jury believed that the cattle guard which caused the injury could have been covered without impairing its usefulness, and that, considering the place where it was located, a reasonably prudent man would have covered it, and covering it would have prevented the accident, then it was defendant's duty to have covered it; and if they believed defendant's failure to cover it was negligence, and that by reason thereof plaintiff was injured, he would be entitled to recover, unless they should find against him on some other issue, leaves the question of negligence to the jury, and is not on the weight of evidence.

**3. Same—Master and Servant—Assumed Risks.**

A brakeman in the railroad service does not assume the risk of an open-pit cattle guard in the yard limits, in which he is injured while uncoupling cars, he having no actual knowledge of it, and having never known of such cattle guard in yard limits, and the evidence being to the effect that they are not usually placed there.

**4. Same—Notice to Company.**

Knowledge of the customary disregard of a rule against uncoupling cars in motion, on the part of the division superintendent, whose duty it is to enforce the rules, is notice to the railway company.

APPEAL from El Paso. Tried below before Hon. C. N. BUCKLER.

*Davis, Beall & Kemp,* for appellant.—1. It was plaintiff's duty to obey the rule, and his disregard of it being the proximate cause of his injury, he can not recover. Railway v. Hall, 78 Texas, 659; Railway v. White, 76 Texas, 103; Pilkinton v. Railway, 70 Texas, 229; Railway v. Wallace, 76 Texas, 636; Railway v. Ryan, 69 Texas, 669; Bailey's Master's Liability, 91, and notes; Railway v. Wood, 35 S. W. Rep., 880; Sloan v. Railway, 86 Ga., 15; Francis v. Railway, 19 S. W. Rep., 935; Railway v. Rice, 11 S. W. Rep., 699; Railway v. Reagan, 33 S. W. Rep., 1052; Wolsey v. Railway, 33 Ohio St., 227; Kroy v. Railway, 32 Iowa, 357; Gleason v. Railway, 73 Fed. Rep., 647.

2. The law imposes on employes, such as brakemen, the duty of informing themselves as to the location, kind, and structure of cattle guards

and switches along their routes, and about which they have to work, and they are presumed to have that knowledge, and to have assumed the dangers incident to the work and employment near and about them. Boyd v. Harris, 35 Atl. Rep., 222; 4 Am. and Eng. Ry. Cases (new series), 472; Fuller v. Railway, 66 N. W. Rep., 593.

*Millard Patterson,* for appellee.—1. The trial court did not err in admitting evidence to the effect that it was the custom and practice of defendant's employes to enter in between moving cars for the purpose of coupling and uncoupling them; and did not err in telling them that if the rule of defendant forbidding employes from entering between cars in motion to couple or uncouple them had been habitually disregarded by defendant's employes with its knowledge, said rule would not be binding. Railway v. Scott, 71 Texas, 709; Railway v. Leighty, 32 S. W. Rep., 800; Railway v. McMahon, 26 S. W. Rep., 160; Barry v. Railway, 14 Am. St. Rep., 611, 11 S. W. Rep., 309; Rutledge v. Railway, 24 S. W. Rep., 1053; Railway v. Loverett, 3 Am. St. Rep., 239; 3 Wood on Railroads, sec. 382; Ford v. Railway, 59 N. W. Rep., 6; Railway v. Robinson, 82 Texas, 663; Railway v. Reagan, 33 S. W. Rep., 1052; Railway v. Nickels, 50 Fed. Rep., 721.

. 2. After plaintiff testified positively that he did not know the cattle guard was where it was, with the testimony of other witnesses to the effect that it would require much more than two months for an employe situated as plaintiff was to acquaint himself with the road, it would have been error for the court to say to the jury that plaintiff was chargeable with the knowledge of the cattle guard's location. Patterson v. Railway, 18 Am. Rep., 412; Railway v. Randall, 50 Texas, 259; Railway v. Pinto, 60 Texas, 517; Railway v. Aylwood, 79 Texas, 678; Railway v. Hahl, 29 S. W. Rep., 1131; 3 Wood on Railroads, 1749, and cases cited; Railway v. Jones, 75 Texas, 154; Shearman & Redf. on Neg., 4 ed., secs. 208, 209.

FLY, ASSOCIATE JUSTICE.—Appellee instituted this suit to recover damages for injuries sustained by him through negligence on the part of appellant. A trial by jury resulted in a verdict and judgment for appellee in the sum of $10,000.

This is a second appeal, the decision in the former one being reported in 39 Southwestern Reporter, 961. The case is before this court on the same pleadings and practically the same evidence as on the former appeal, and reference is made to the former opinion for a statement of the pleadings.

We find that appellee was an employe of appellant, and, while in the discharge of his duties as brakeman, entered between two moving cars to uncouple them, and fell into an open pit cattle-guard within the yard limits, and a car of appellant passed over him and crushed his right arm so that he lost it and sustained other serious and permanent injuries. The injuries were caused by the negligence of appellant. No negligence on the part of appellee contributed to the injury. Appellee at the time

of the injury was 43 years old, healthy and robust, and had a life expectancy of twenty-three years. There was proof to the effect that appellant had a rule prohibiting employes from entering between moving cars for the purpose of coupling or uncoupling them, but it was proved that the rule was uniformly disregarded by employes with the knowledge of appellant and that no serious effort was made to enforce it. It is the general doctrine of American courts that, if it is customary to disobey the rules, and there is no effort made by the railroad company to enforce them, such disobedience will not defeat a recovery. Railway v. Nickels, 50 Fed. Rep., 718; Barry v. Hannibal (Mo.), 11 S. W. Rep., 308; Fish v. Railway (Iowa), 65 N. W. Rep., 995.

The rule is thus announced in this State: "Proper rules which are usually and customarily violated are presumed to be not intended for enforcement; not rules at all." Railway v. Scott, 71 Texas, 703.

When the violation of the rules has been continued for a long while, abrogation of them by the company is presumed. Railway v. Leighty (Texas Civ. App.), 32 S. W. Rep., 799, affirmed in 88 Texas, 604.

In the case above cited no stress is put upon the question of knowledge on the part of the company of the violation of the rules, but if the rule be, as insisted by Elliott in his work on Railroads, section 1282, that the knowledge of the failure to obey rules should be known to the railroad company in order that a violation will not bar a recovery, that requisite is met in this case. The knowledge of the violation of the rules was brought directly home to the company through one of its superior officers. The knowledge was communicated to the division superintendent, whose duty it was to see the rules enforced. "Notice given to, or knowledge acquired by, an officer, or an agent of the corporation, when acting for the corporation within the scope of his authority concerning matters about which he is acting or has authority to act, will be imputed to the corporation." Elliott on Railroads, sec. 226; Railway v. Kier (Kan.), 21 Pac. Rep., 770; Railway v. Nickels, 50 Fed. Rep., 718; Whittaker v. Railway, 126 N. Y., 544.

The fourth paragraph of the charge is as follows: "If you believe from the evidence that said cattle guard at or near Fort Hancock could have been covered in such a way as to not impair its usefulness and effectiveness as a cattle-guard, and that, taking into consideration the place where said cattle-guard was located, a reasonably prudent man under the same circumstances and in the exercise of reasonable diligence would have covered the same, and that covering the same would have prevented injury, then it was the duty of defendant to have covered this one. And if you believe from the evidence that the failure of defendant to cover the same was negligence on its part, and that by reason of such negligence the plaintiff was injured, then he would be entitled to recover, unless you shall find against him on some other issue as to which you will be instructed hereafter."

It is the complaint of appellant that the charge is upon the weight of the testimony, in that it instructs the jury that the omission of certain

acts would constitute negligence. The charge does not seem to be open to the criticism, but leaves the question of the feasibility of covering the cattle-guard, the question of whether the location was such that a reasonably prudent man would have covered it, and whether the accident would have occurred, to the jury, and if they found in the affirmative, then the court declares that it was the duty of appellant to have covered the cattle-guard. The question of negligence is left for the jury to determine. Railway v. Lankford, 88 Texas, 499; Conwill v. Railway, 85 Texas, 97.

None of the charges requested by appellant should have been given. Most of them were upon the weight of the testimony, and the law applicable to the case contained in them was given in the charge of the court. The charges being identical with those discussed by the court on the former appeal, we reiterate the decision thereon, and a further discussion is unnecessary. Every question arising from the facts was clearly presented in the charge of the court, and the jury found in favor of appellee. There are facts that will justify the verdict. It is true that appellee had traveled over the road a number of times, and swore that he knew there was an opening where he fell, but he stated that he thought it was covered. The open pit cattle-guard was within the switch limits, and that it was negligence to have it constructed at that locality is not only shown by the testimony of appellee's witnesses, but by the testimony of J. Kruttschnitt, the general manager of the Southern Pacific system, who swore that he endeavored to keep cattle-guards out of the yard limits. There must have been some cogent reason for such caution. The jury were justified in finding that the cattle-guard in question ought not to have been where it was, uncovered, and that appellee did not know that it was there, or at least was under the impression that it was covered and could be crossed by him.

The verdict is not excessive. Railway v. Randall, 50 Texas, 254; Railway v. Johnson, 76 Texas, 421; Railway v. McClain, 80 Texas, 85.

The judgment of the District Court is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

FLY, ASSOCIATE JUSTICE.—There is abundant proof in the record to the effect that it was the custom of railroad companies to have cattle-guards within yard limits covered, and we are justified in finding, and do find, that as a rule cattle-guards within yard limits are covered, and that if the cattle-guard in this instance had been covered, the injury would not have occurred. Appellee testified to the effect that he never saw an open pit cattle-guard in a yard, and that he had no knowledge whatever of there being a cattle-guard in the yard limits at Fort Hancock.

It is insisted by appellant that the cattle-guard was not in the yard limits, but appellee swore that it was, and C. A. Blanchard, the agent of

appellant at Fort Hancock, swore that the yard limits extended at least two car lengths west of the cattle-guard, and the diagram shows that the larger portion of the yard was east of the cattle-guard. We draw the conclusion from this testimony that the cattle-guard was in the yard limits.

In regard to the rule requiring employes not to enter between moving cars to couple or uncouple them, the division superintendent, W. R. Martin, testified, that in coupling and uncoupling cars a man goes in between the cars. That in uncoupling "the pin is always pulled while the car is in motion, and I have known this has been the practice since I remembered anything about railroading." The evidence of this witness, as well as that of appellee, showed that the rule was rarely ever regarded, and that it was impracticable to couple cars unless they were in motion. Martin swore that the rule was generally violated, and that the loss of time that enforcement of the rule would entail, may have had something to do with its nonenforcement. The evidence shows that there was no effort to enforce the rule. It is a rule of law that "when the nature of the business is such as to require it, it is the duty of the master, which the law imposes upon him as due to his servants engaged therein, to exercise reasonable care and diligence in making and promulgating rules which, if faithfully observed, will give them reasonable protection from injury." Bailey on Mast. and Serv., 72.

It is also the rule in a number of states, Texas among the number, that the duty of the master does not cease upon the making and promulgation of rules for his servants, but that he must go further and put forth honest efforts to have them enforced, and if they are habitually violated, and such violation or disregard of the rules is known to the master, they are in effect abrogated, and such violation will not prevent a recovery on the part of the servant. Railway v. Kier (Kan.), 21 Pac. Rep., 774; Hissong v. Railway (Ala.), 8 South. Rep., 776; Whitaker v. Canal Co., 126 N. Y., 544, 27 N. E. Rep., 1042.

The doctrine of assumed risks, when a servant enters into the employment of his master, rests upon the basis of the knowledge, actual or presumed upon the part of the servant, of the risks commonly attendant upon the business upon which he is desirous of entering. So it becomes a material question in most cases of this character to determine whether the servant knew, or ought reasonably to have known of, the danger. The determination of this matter raised a question of fact to be passed upon by the jury, and the mere fact that appellee may have passed over the road at different times and could have seen the cattle-guard would not raise the presumption that he actually saw it. He was charged with ordinary care in the ascertainment of the danger incident to his employment, but it can not be laid down as a proposition of law that where he was placed in a position where he might have gained knowledge of the danger, he is thereby precluded from recovery. Railway v. Huber (Pa.), 18 Atl. Rep., 334; Barbo v. Bassett (Minn.), 29 N. W. Rep., 198; McKee v. Railway (Iowa), 13 L. R. A., 817; Lee v. Railway, 89 Texas, 583.

The evidence showed that appellee had been working on that division

of the railroad less than two months; that he had been over the cattle-guard but twice in the daytime; that his attention had never been called to the cattle-guard; that he had never known of an open pit cattle-guard in yard limits, and that he was hurt before sunrise on a foggy morning. It is not contended that appellee had actual knowledge of the cattle-guard, and the jury were justified in finding that the facts and circumstances did not charge him with knowledge of the danger. The evidence was to the effect that open pit cattle-guards were never put within yard limits, and if every cattle-guard outside of yard limits between El Paso and Houston had open pits, the presumption would not be raised that one had been put where appellee and other witnesses say they never saw one, within yard limits. In fact the conclusion from the testimony is, that cattle-guards of no kind should be placed in yard limits. The jury was justified in finding that if the pit had been covered the accident would not have occurred.

We are of the opinion that there was no assumption upon the part of the court, in the charge, that the rule requiring brakemen not to go between moving cars to couple or uncouple them had been waived by reason of knowledge of its habitual violation by employes, but that this question of fact was left for the jury to determine. It was the duty of the court to inform the jury of the effect to be given to it, if determined in the affirmative. The charge made an admirable presentation to the jury of every issue raised by the pleading and evidence, and was as favorable to appellant as the law would permit, and there is no just ground of complaint in regard to the refusal of the court to give the various requested instructions.

It is contended by appellant that although W. R. Martin, the division superintendent of appellant, had full knowledge of the utter disregard of the rule in issue, this was not notice to the railroad company. We are of the opinion that it was. The Texas authorities cited by appellant do not assert a contrary doctrine.

We have carefully considered every point raised by the motion for rehearing, and we adhere to the opinion that there are no errors of law necessitating a reversal, and that the verdict of the jury finds justification in the statement of facts.

The motion is overruled.

*Overruled.*

Writ of error denied.