ST. LOUIS & S. F. R. CO. v. ARMS.†

(Court of Civil Appeals of Texas. April 15, 1911. Rehearing Denied May 6, 1911.)

1. COURTS (§ 12*)—JURISDICTION—SUITS BETWEEN NONRESIDENTS.

The district court of G. county had jurisdiction of a suit by a nonresident against a for-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

eign railroad corporation for injury arising in another state, where a domestic corporation owning the part of the line in the county was a mere subcorporation; the foreign company completely controlling such line.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 12.*]

2. MASTER AND SERVANT (§ 243*)—RAILROADS — INJURY TO HOSTLER — VIOLATION OF RULES.

Habitual violation of a railway company's rule prohibiting a particular method of cleaning locomotive ash pans with the knowledge and consent of the superintending foreman warranted an employé in deeming the rule abrogated.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 243.*]

3. MASTER AND SERVANT (§ 141*)—RAILROADS —RULES—PROMULGATION.

A railway company was bound to use ordinary care to promulgate a rule governing work about locomotives so as to bring such rules to the employés' attention.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

4. MASTER AND SERVANT (§ 288*)—RAILROADS —INJURY TO HOSTLER—ASSUMPTION OF RISK —JURY QUESTION.

Whether a railway hostler injured by movement of a locomotive under which he was working assumed the risk held, under the evidence, a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

5. MASTER AND SERVANT (§ 289*)—RAILROADS —INJURY TO HOSTLER—CONTRIBUTORY NEGLIGENCE—JURY QUESTIONS.

Whether a railway hostler injured by movement of an engine under which he was working was guilty of contributory negligence held, under the evidence, a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

6. CONSTITUTIONAL LAW (§ 238*) — EQUAL PROTECTION OF LAW — FELLOW-SERVANT DOCTRINE.

Const. Okl. art. 9, § 36, abolishing the common law applicable to injuries caused by fellow servants, does not infringe U. S. Const. Amend. 14, guaranteeing equal protection of laws.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 238.*]

7. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL— MATTER COVERED.

In an action for injury to a railway hostler caused by a movement of a locomotive under which he was working, a refused instruction that he could not recover if the work could have been done with less danger by using a lever while standing by the side of the engine was sufficiently covered by an instruction that plaintiff could not recover if he could have done the work by means provided on the outside of the engine for such purpose, and if his failure to employ such method was negligence contributing to his injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by J. A. Arms against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

W. F. Evans, Andrews, Ball & Streetman, and Head, Smith, Hare & Head, for appellant. Wolfe, Maxey, Wood & Haven, for appellee.

RAINEY, C. J. On August 21, 1909, appellee, J. A. Arms, was in the employ of the appellant at work at night at Francis, Okl., in the capacity of hostler. It was a part of his duty as hostler to assist in making engines ready for the road, which included the recleaning of ash pans of incoming engines at a pit provided for that purpose. Prior to May, 1909, a practice had grown up among the employés at Francis to draw the slide of the ash pans by means of a chain fastened to the track; the slide being drawn by hitching the chain to the pan and starting the engine. No chain was provided by the defendant for this purpose, but the chain was an ordinary one in use for other purposes, and which was procured by the employés in the yard, or at the store as occasion required. This manner of doing the work was not in vogue at any other yard on account of the injury which was thus being done to the ash pans. On May 19, 1909, by order of William Henry, master mechanic, who acted under direction of Superintendent Boss, a bulletin was posted by C. E. Dewese, foreman at the Francis shop, which prohibited this manner of doing the work. The bulletin referred to was as follows: "Francis, Okla., May 19, 1909. To all Employés, Francis: Am in receipt of a letter from Mr. Henry that Mr. Boss advises him that ash pan slides are being opened at Francis by pulling with chains, and consequently the rigging is broken and pulled off. Mr. Henry agrees with Mr. Boss that while it has been the practice on this division for several years, that it is a bad one, and must be stopped. We must not use chains to pull pans open, or attach them to slide connections and open by moving engine. When slides are in bad shape and pans warped so that slides do not act free you should make a report of same to your foreman so that he may have them put in shape. This rule must be lived up to to the letter. Division Foreman." In posting this bulletin, Dewese was acting under direction of his superior, Mr. Henry, and was subject to his orders. After the posting of this bulletin in May, plaintiff in August, 15 days before he was injured, entered the employ of defendant at Francis as hostler, as aforesaid, and on the night of August 21st he was injured while attempting to pull the slide of an ash pan in the way prohibited by said bulletin. The way he received his injury was this: He had started to the pit on engine 621 for the purpose of cleaning its ash pan, and, when he got to the pit, he found it occupied by engine 637 in charge of another crew. The crew on 637 had tried to pull the slide of its ash pan with the chain, but had

found the hook on the end of the chain so straightened that it would not hold, and plaintiff left his engine and undertook to assist them. He crawled under 637 and placed the straightened hook on the pan with the intention of holding it there until the engine moved and took the slack out of the chain. His intention was for the engine to only move a few inches and then stop, but in attempting to do this the hostler in charge caused it to start suddenly, and plaintiff was thereby knocked down and one of his arms cut off. The only negligence submitted is that of the hostler starting the engine improperly. A trial before a jury on April 15, 1910, resulted in a verdict and judgment in favor of plaintiff for $11,000, to reverse which this appeal is taken.

[1] The first assignment presented is: "The court erred in overruling defendant's plea to the jurisdiction of this court, filed herein March 15, 1910, and in entertaining jurisdiction of this case after said plea had been overruled." The proposition submitted is: "There was no evidence that defendant was in fact operating its railroad, or doing business as such in the state of Texas, and inasmuch as the laws of this state prohibit foreign corporations from operating railroads or doing business as such herein, and inasmuch as plaintiff alleged, and the undisputed evidence showed, that defendant was a corporation of the state of Missouri, and that plaintiff was a citizen of Oklahoma at the time of the trial and at the time the injuries were inflicted, and that the injuries were received in Oklahoma, the court erred in assuming jurisdiction over the defendant and of this case." The plea of privilege says, in effect, that both plaintiff and defendant reside without the state of Texas, plaintiff being a resident of the state of Oklahoma, and the defendant being a foreign corporation, incorporated by the laws of Missouri, and not doing business within Texas, nor is it incorporated by the laws of Texas; that its principal office is not in Texas, but in St. Louis, Mo.; that plaintiff's injuries were received in the state of Oklahoma, and not in Texas; "that this defendant has not at any time since before plaintiff received the injuries complained of run or operated its railroad in this, Grayson county, or at any other place in this state. Nor has it had or maintained any agent or representative in said county or state unless the contrary be true from the following facts: Certain agents and representatives, to wit, C. E. Wynne, Jr., whose residence and office is in the city of Ft. Worth, Tarrant county, Tex., and others whose employment and duties are the same as those of said Wynne, as hereinafter shown, and whose residences and offices are in the city of Dallas, Dallas county, Tex., the city of Houston, Harris county, Tex., and the city of San Antonio, Bexar county, Tex., but none of whose residence or office or place of business is in Grayson county, Tex., have

been since before the institution of this suit, and are now, employés and agents of the Ft. Worth & Rio Grande Railway Company, and the St. Louis, San Francisco & Texas Railway Company, being employed solely by said companies and carried on said companies' regular payroll, jointly and by said companies paid a regular monthly salary, together with their expenses. That the duties of the said Wynne and others whose employment is the same, as aforesaid, consist in soliciting business in behalf of said Ft. Worth & Rio Grande Railway Company and St. Louis, San Francisco & Texas Railway Company, and other railroad companies, including the defendant. For such services on its behalf so rendered by said Ft. Worth & Rio Grande Railway Company and said St. Louis, San Francisco & Texas Railway Company to it, this defendant pays to said Ft. Worth & Rio Grande Railway Company and said St. Louis, San Francisco & Texas Railway Company a certain amount each month, as do said other railroad companies for similar services in their behalf. That this defendant does not run or operate any line of railroad in the state of Texas, but that its lines of railroad are wholly outside of said state, and that the business solicited in its behalf in said state by said Wynne and others aforesaid is business which first passes over the line of some other railroad in the state of Texas to a point outside of said state before it is received and transported by this defendant; and for the purpose for which this defendant participates with said other railroad companies in paying a certain amount each month for such service to said Ft. Worth & Rio Grande Railway Company and said St. Louis, San Francisco & Texas Railway Company is to secure the routing of business and traffic from said lines over this defendant's lines of road without this state."

The evidence shows that the "Frisco System" is a group of railway lines consisting of the St. Louis & San Francisco Railway Company, Chicago & Eastern Illinois Railway Company, Evansville & Terre Haute Railway Company, Paris & Great Northern Railway Company, St. Louis, San Francisco & Texas Railway Company, Ft. Worth & Rio Grande Railroad Company, and the Kansas City, Memphis & Birmingham. One line, the St. Louis & San Francisco Railroad Company, appellant, a Missouri corporation, owns from St. Louis to Red river, and connects with the St. Louis, San Francisco & Texas Railway Company, which is incorporated under the laws of Texas. Between Red river and Denison, the Texas Company owned its own track, but run its trains over the Houston & Texas Central Railroad Company's tracks to Sherman, Grayson county, Tex. All the stock of the Texas Company was owned and held by the Missouri Company, except a few shares that had been transferred to certain persons residing in the state of Texas, who constituted the board of directors for

the Texas Company. These held one share each, which was given to them for the purpose of qualifying them as directors. Passenger trains were operated through from St. Louis to Ft. Worth, and some portions of the train going even farther than this. Freight trains were operated from points in the state of Oklahoma across Red river into the state of Texas. That while on the time cards and on some of the tickets sold there was a station known as "State Line" which was supposed to be a station on the line between the state of Oklahoma and the state of Texas, no stop was made there, no passengers or freight received or discharged there, and all the crews operating trains north and south across Red river were in the employ of the Missouri Company, received their pay from the Missouri Company, and there was no change made in the uniforms worn by these men at "State Line." The Texas Company owned no rolling stock, and operated no train over its road north of Sherman. All the orders for running trains over this part of the track (with the exception of that portion of the Houston & Texas Central track used jointly) were operated exclusively by orders issued by the trainmaster and chief dispatcher of the Missouri Company. Those persons who were supposed to be in the exclusive employ of the Texas Company were as ready to solicit business for the Missouri Company as for the company by which they claimed to be employed and paid, and they were shown to perform many services for the Missouri Company without compensation by it. They claimed to do this because of the "close connection" of the two companies, and because they "had the same president." Orders issued by those supposed to be in the exclusive employ of the Texas Company were recognized as binding upon the subordinates of the Missouri Company, while instructions from the chief officials of the Missouri Company were readily obeyed by employés of the Texas Company. Freight rates were fixed by the Missouri Company for the Texas Company, or, at least, this was true as to the Paris & Great Northern, the relationship of which to the Missouri Company was identical with that of the St. Louis, San Francisco & Texas Railway Company. The Texas Company owned no locomotives or rolling stock, but depended entirely upon the Missouri Company for its equipment. The local attorneys ostensibly in the exclusive employ of the Texas Company, having no contract or agreement whatever with the Missouri Company for rendering service to it, or being compensated for services rendered by them for its benefit, without question or demand for further or additional compensation, for a long period of years, were accustomed to defend all suits brought against the Missouri Company in Grayson county. On time table No. 23, attached to the record, it is shown that the St. Louis & San Francisco Railroad Company operated the line of railway extending from Francis to Sherman. On the back of this is printed the names of C. R. Gray, senior vice president, W. C. Nixon, vice president and general manager, W. T. Tyler, general superintendent, S. H. Charles superintendent, E. D. Levy, superintendent of transportation, all nonresidents and officials of the St. Louis & San Francisco Railroad Company. On page 7 of this time table will be found a "list of company surgeons beginning with Dr. G. W. Cale, Jr., chief surgeon, St. Louis, Missouri, down to and including their division surgeon, local surgeon and occulist located at Sherman, Texas, where it appears said company maintains an emergency hospital." On the last page or back of this time card will be found a "Map of Frisco Lines and Connections." The line from Brady in the state of Texas to Sapulpa is labeled "Frisco Line." The folder issued by the St. Louis & San Francisco Railroad Company is attached to the record, showing its various officers and agents. On page 9 of this folder, it is shown that said company operates through Pullman sleeping cars between St. Louis and various points in Texas. Service of citation was had on E. L. Hill, J. T. Cobb, W. N. Downs, J. W. Waterson, L. J. Lereoux, and S. E. Peacock. Hill was a passenger conductor of the appellant between Sherman and Sapulpa. Peacock was local agent at Sherman for the St. Louis, San Francisco & Texas Railway Company. Cobb was the traveling passenger agent for the Ft. Worth & Rio Grande and also the St. Louis, San Francisco & Texas Railway Company and located at Sherman. Lereoux was telegraph operator at Denison for the St. Louis, San Francisco & Texas Railway Company. Downs was ticket agent at the union depot, Sherman. There is other evidence in the record tending to show that the agents of all the roads worked for the interest of the "Frisco System," from which we are forced to the conclusion that the St. Louis, San Francisco & Texas Railway Company was a subcorporation and subordinated and controlled by the appellant through its principal officers whose principal offices were situated in St. Louis, Mo.

As said in the case of Buie v. Chicago, Rock Island & Pac. Ry. Co., 95 Tex. 51, 65 S. W. 27, 55 L. R. A. 861: "If we view these corporations from any standpoint, it will be difficult to distinguish their corporate powers, management, or officers so as to ascribe any function of corporate control to the Texas Company, and we conclude that the Texas Company is but the instrument used by the Rock Island & Pacific Company to carry on its business in Texas," and, further, "the authorities cited fully sustained the proposition that, when one corporation makes use of another as its instrument through which to perform its business, the principal corporation is really represented by the agents of the subcorporation and its liability is just

the same as if the principal corporation had done the business in its own name." The plea to the jurisdiction was properly overruled. Railway Co. v. Sizemore, 116 S. W. 403; Railway Co. v. Godfrey, 48 Tex. Civ. App. 616, 107 S. W. 1135.

[2] The plaintiff was injured while endeavoring to clean an ash pan of an engine, and in doing so the defendant claims the manner in which it was being done was in violation of defendant's order. The court charged the jury, in effect, that if plaintiff was doing the work in the usual and customary manner, and used ordinary care in its performance, he was entitled to recover. The appellant complains of this charge, and submits the following proposition, viz.: "There being positive evidence that defendant had prohibited the pulling of ash pan slides in the manner set forth in the charge complained of, and that plaintiff had notice of such prohibition, it was error for the court to make 'the common and usual method of employés in doing the work' the test of plaintiff's right to do it in that way, regardless of defendant's directions. The employer has the right to direct the manner his work is to be done, and his employés have no right to overrule his directions. Where employés have been sustained in disregarding the directions of the employer, it is because under the facts the employer has either himself, or by those authorized to do so, acquiesced in the conduct of his employés, and thereby in effect revoked the direction." The evidence shows that on May 19, 1909, the appellant issued a bulletin to its employés at Francis warning them against using a chain in pulling ash pan slides open, and that such a practice must be stopped. This bulletin was posted and remained posted for several weeks, but seems not to have been strictly observed, and at the time plaintiff was hurt it had been usually and habitually disregarded. Dewese, appellant's division foreman, who had charge of the hostlers at Francis, knew of the usual and habitual custom of pulling ash pans with a chain as was done at Francis and acquiesced therein. Plaintiff was injured in August. He had worked for appellant at Francis about three years, but at the time the bulletin was issued was not working as hostler, but at some other job. Before the posting of the bulletin, the chain was used, and, when he returned in August, the same custom was practiced. There was no effort made by the appellant to enforce the rule prohibiting the use of a chain in pulling ash pans, but it uniformly neglected to do so. The rule was continuously and habitually violated for a long time with the knowledge and consent of those whose duty it was to have it enforced and plaintiff had the right to consider the rule abrogated. The court did not err in giving the charge complained of. Railway Co. v. Hinzie, 82 Tex. 623, 18 S. W. 681; Railway Co. v. Scott, 71

Tex. 703, 10 S. W. 298, 10 Am. St. Rep. 804; Railway Co. v. Jacobs, 37 Tex. Civ. App. 390, 84 S. W. 288; Railway Co. v. Slinkard, 17 Tex. Civ. App. 585, 44 S. W. 35.

[3] The fourth assignment is: "The court erred in giving the following part of paragraph six of the general charge to the jury: 'The undisputed evidence shows that prior to the issuance of said bulletin the work of cleaning the ash pans to engines had been done by means of a chain, and it therefore became the duty of defendant when it directed a change in the method of doing said work to exercise the care that an ordinarily prudent person would have exercised to publish or post said bulletin so that the change in the manner of doing the said work would be brought to the attention of those employed upon whom rested the duty of said work.'" Plaintiff was not working as hostler in May, when the bulletin was issued. When he went to work as hostler in August, the manner or custom of performing the work was the same as that before the issuance of the bulletin. He knew that Dewese, the foreman, in control, saw the use of the chain, and did not forbid it. Under these circumstances, we are of the opinion the court did not err in giving the said instruction.

The fifth assignment of error is: "The court erred in giving the following part of paragraph 7 of the general charge to the jury: 'But in this connection you are instructed that if you believe from the evidence that said bulletin was made and published by defendant at said time, but if you further believe from the evidence that after said date, and prior to plaintiff's entering the service of defendant as hostler or hostler helper, said rule had been continually and habitually violated by defendant's employés engaged in doing said work, and if you further believe from the evidence said rule was continually and habitually violated by said employés up to the time plaintiff was injured, and if you further believe from the evidence that the continual and habitual violation of said rule by said employés was known and acquiesced in by defendant's foreman at Francis, if any such continual and habitual violation you find there was, then you are instructed that this would amount to an abrogation of such rule, and, if you so find, then you are instructed that no such rule was in force at the time of the occasion in question.'" The objection to the charge is that it tells the jury that the knowledge of Dewese, the division foreman, of the habitual violation of the said rule, would abrogate it. We see no error in this. Dewese was the one through whom the rule was promulgated. He had the control of plaintiff, and was the one to whom plaintiff had to look for the command of the master, and whether or not a rule was in force he did not have to go beyond Dewese to ascertain, and seeing the

rule habitually violated in the presence of Dewese, without his protest, plaintiff had the right to presume the rule had been abrogated, and the court was authorized to so instruct the jury.

[4, 5] The sixth, seventh, and eighth assignments complain that the verdict is contrary to the evidence in not finding plaintiff guilty of contributory negligence, and that he assumed the risk. Plaintiff was a hostler in appellant's employ at Francis, Okl. One of his duties was to clean the ash pans of engines. The usual and habitual custom in doing this was by means of a chain fastened to the track, the other end to be fastened to the ash pan and then to start the engine. On the occasion in question, plaintiff got under the engine to fasten the chain to the ash pan, which was usual and customary. The engine was to be moved slowly. It was started with a quick and rapid movement, and plaintiff was caught by the engine and injured. The issue of contributory negligence and assumed risk was, we think, under the facts, a question for the jury. The court properly left it for the jury's determination. The jury's findings were favorable to the plaintiff, and we see no good cause to reverse the findings. The court's charge sufficiently covered these issues.

[6] The complaint is made that section 36, art. 9, of the Constitution of the State of Oklahoma, which abolishes the common law applicable to injuries caused by the acts of fellow servants, is void because obnoxious to the first section of the fourteenth amendment to the Constitution of the United States. In the case of Railway Company v. Richardson, 125 S. W. 623, this court decided adversely to the contention of appellant, which ruling was affirmed by the United States Supreme Court (219 U. S. ——, 31 Sup. Ct. ——, 55 L. Ed. ——), decision not yet published. See, also, Railway Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. ——.

[7] The twelfth assignment reads: "The court erred in refusing defendant's special charge No. 6, as follows: 'If you believe from the evidence that plaintiff was injured while attempting to draw the slide of the ash pan by using a defective chain and having the engine therewith pull the slide while he remained in the pit under the engine, and that said ash pan slide could have been pulled and the ash pan opened by using a lever while standing by the side of the engine, and that the manner of opening the ash pan adopted by plaintiff was more dangerous than would have been the one of opening it by the lever, and that plaintiff received his injuries by reason of his having adopted such more dangerous method, and would not have been injured had he adopted the other method, you will find for the defendant.'" The proposition is made that "where there are two practicable ways of doing the employer's work, one of which is more dangerous than the other, it is the duty of the employé to adopt the least dangerous one." The court in its general charge instructed the jury: "Again, if you believe from the evidence that plaintiff could have dumped or emptied the ash pan to said engine by means provided on the outside of said engine for such purpose, and if you further believe from the evidence that in failing to employ such method in emptying said ash pan plaintiff was himself guilty of negligence, and that such negligence, if any, proximately contributed to bring about the injury he received on said occasion." The court's charge substantially presented the issue. Again, the evidence shows that plaintiff was performing the work in the usual and customary way that it had been done for a long time, which way had been sanctioned by the division foreman. We think, if such charge was applicable, it was sufficiently presented by the court. Railway Co. v. Rogers, 128 S. W. 711.

Several requested charges were refused, which relate to the issue of the servant violating the rules of the company. The charges were properly refused, as shown by the previous discussion herein. All other assignments not herein mentioned have been carefully considered.

We find no reversible error, and the judgment is affirmed.