on the plaintiff, which it proceeded to do by an action, during the pendency of which the time to answer was extended 30 days. This did not amount to an extension of time of the payment of the note. The indorser could at any time have paid the note, and brought an action; and, notwithstanding the stipulation, the plaintiff in the action could have withdrawn his action, and begun a new one. In no sense can a mere extension of time to answer in an action be deemed an extension of time for the payment of an obligation upon which the action is founded. This question seems to have been settled in this state.

In Ducker v. Rapp, 67 N. Y. 464, it was said:

"An ordinary stipulation during a litigation to extend the time to answer would not affect a surety, nor would any agreement for any indulgence to pay, or otherwise, unless it was founded upon a good consideration, and operated to prevent the collection of the demand in any form."

The same was said in Ross v. Ferris, 18 Hun, 210, and in Steinbock v. Evans, 122 N. Y. 551, 25 N. E. 929.

Under the rule contended for, a plaintiff in an action against a maker of a note would discharge the indorser by giving or receiving an extension of time to take any step in the action which would delay for a single day the recovery of the final judgment. The holder of a promissory note owes no such duty to the indorser.

The judgment should be affirmed, with costs. All concur.

---

(13 App. Div. 467.)

### MOELLER v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

MASTER AND SERVANT—NEGLIGENCE—FELLOW SERVANT.

 The death of plaintiff's intestate was caused by the negligence of a fellow servant, where the fellow servant failed, in violation of a rule of which he knew, to display a red flag on a car on which he and the intestate were working together as car repairers, and an engineer, not being warned by a flag that the car repairers were about the car, ran another car against it, killing the intestate.

Appeal from trial term, Oneida county.

Action by Elizabeth Moeller, as administratrix of the estate of Paul Moeller, deceased, against the Delaware, Lackawanna & Western Railroad Company, to recover for death by wrongful act. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial made on the minutes, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

William Kernan, for appellant.
Smith M. Lindsley, for respondent.

FOLLETT, J. This action was begun February 8, 1896, to recover damages for the death of the plaintiff's intestate, caused, it is alleged, by the negligence of the defendant. From some time

in 1892 to March 16, 1894, the intestate, who was a carpenter, was employed by the defendant in repairing cars in its yard at Utica, N. Y. On the date last mentioned, while engaged in repairing cars upon a side track, he was crushed between two cars, and died on the same day. At Utica the defendant has a yard in which disabled cars are usually repaired, but in case slight repairs are needed upon cars they are frequently repaired while standing on the side track. At the time of the accident Thomas Thatcher was, and for 23 years had been, the master mechanic of the Utica division of the defendant's road, having charge of the shops, mechanics, and trainmen at Utica, with power to hire and discharge employés. Henry C. Krickmeir was the foreman of the carpenters employed at this station, under whom was Nicholas Young, a carpenter engaged in repairing cars. Thomas Jones was the foreman, having charge of the laborers and helpers, under whom was the plaintiff's intestate. Between 7 and 8 o'clock on the morning of March 16, 1894, Krickmeir directed Young to repair a brake on a car standing on a side track. Plaintiff's intestate was Young's helper, and the two went to the car and began to repair the brake. The side track extends east and west through the yard. The brake to be repaired was on the east end of a combination car used for carrying baggage and milk. Eight or ten feet east of said car, and standing on the same side track, was a milk car, and east of the milk car were coal cars. The intestate began to remove the defective brake, standing with one foot between the rails of the side track, with his face towards the west, the milk car and coal cars being behind him. While standing in this position, and at work on the brake, a car was shunted onto the east end of the side track with such force that it struck the coal cars, which in turn struck the milk car, forcing it against the combination car, and crushing the plaintiff's intestate to death. As a cause of action it is alleged in the complaint that the defendant neglected properly to guard these cars, neglected to notify the locomotive engineers that the car was being repaired, and that defendant had failed to establish, promulgate, and enforce rules providing for the protection of its employés while engaged in repairing cars on side tracks. The defendant alleged in its answer that the intestate, by his own negligence, contributed to the accident, and also that the accident was caused by the negligence of the fellow servants of the plaintiff's intestate.

The only negligence on the part of the defendant which was sought to be established on the trial was that this car was not properly guarded, and that defendant had failed to establish and enforce rules for the protection of its employés while engaged in repairing cars on side tracks. This was the question litigated. The following rules, printed on the time-table in force at the date of the accident, were introduced in evidence:

"Rule 2. All employés of the company are expected and required in all cases to exercise the greatest care and watchfulness to prevent injury or damage to person or property. Vigilance and watchfulness insure safety. In all cases of doubt adopt the safe course." "Rule 74. Every employé must acquaint himself

with these rules and directions, and keep a copy of them in his possession. New rules are made from time to time as occasion requires. Notice of them is given on the bulletin boards of the company of Utica and Richfield Junction. Employés must keep themselves informed of new rules by examining these bulletin boards. Rule 75. A red flag by day and a red light by night, placed on the drawhead, platform step, or the top of a car at the end of the train or car standing on the main track or siding, denotes that car repair men are at work underneath or about the car or train. A car or train thus protected must not be coupled or moved until such red flag or light is removed by the repair men. Men repairing cars must see for themselves that they are protected by such red flag in the day time and red light at night. This rule is for the government of all classes of employés working in the yards as well as those running on the road."

It was conceded on the trial by the counsel for the plaintiff that these rules were of "long standing," and it was shown that for several years these rules had been printed on the time-tables issued by the defendant for the information of its employés, but they were not printed on the time-tables issued for the information of the public. It was also shown that the employés' time-tables were freely distributed among the persons employed on the road and in the shops and yard. It was not contended by the plaintiff on the trial, nor before this court, that these rules, if observed, were inadequate to protect employés engaged in repairing cars on side tracks.

Nicholas Young, a witness sworn in behalf of the plaintiff, testified that he and the intestate went together to repair the brake on the defective car. He further testified that he then knew of the existence of rule 75; that he had read it, and that he and the intestate did not put up red flags on that occasion, because "we thought it was such a short jog there wouldn't be any need of it." And, further: "I knew where there was a red flag that day. I had been instructed to use red flags when repairing cars, and I knew where there was one. I disobeyed orders, as I understood them, that day. I am still in the employ of the company. I disobeyed the orders of the company, as I understood them, before that time." At the time of the accident Young and the intestate were engaged in a joint act in repairing this brake, and, in case the intestate knew of the rule, he was negligent; but, assuming that he did not know of it, Young did, and his negligent disobedience of rule 75 was the cause of the accident. Thus it appears that the accident was caused by the joint negligence of the intestate and of Young, or was caused by the negligence of Young, who was the intestate's fellow servant, which defeats the plaintiff's right to recover. The fact that rule 75 had been occasionally violated by the defendant's employés was no excuse for its violation by the intestate and Young on this occasion. Their violation of the rule was the direct and immediate cause of the accident. The engineer in charge of the locomotive, having no notice that a car was being repaired on the side track, was not negligent in shunting the car onto that track. The accident was caused solely by the neglect of Young and of the plaintiff's intestate.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur.