upon the hearing before the surrogate. It is true that the petition does not in terms aver that the trustees, as such, have any money or property of the estate in their hands for which they are required to account to the petitioner; but it does appear that moneys have come to their hands, of which they have made no account, and that in fact no account as trustees has ever been rendered. The answer of the trustees does not deny these averments, nor does it show that the trustees are not in possession of money and property for which they should account.

It is clear from the clause in the will above quoted that the petitioner is a person contingently interested in the estate, and as such he is entitled to an accounting whenever his interest is made to appear by a duly-verified petition, unless he has been excluded by judgment, decree, or other final determination from which no appeal is pending. Code Civ. Proc. § 2514, subd. 11. This provision of the Code is absolute, except that it does not deprive the surrogate, in the exercise of his discretion, of authority to deny the application, where it appears that the petitioner is not entitled, upon the face of the proceedings, to the order which is asked (In re Wagner's Estate, 119 N. Y. 28, 34, 23 N. E. 200); but in the present case no such fact appears. As we have seen, the release was insufficient to discharge the trustees. The provisions of the will show a contingent interest, and the trustees, with all the facts within their knowledge, have not seen fit, in their answer, to set up, if such be the fact, payment to the cestui que trust named in the will; and if there has not been such payment, and they are not otherwise discharged, the petitioner becomes entitled to take, by virtue of the provisions of the will.

It follows that the order should be reversed, and the proceedings remitted to the surrogate of Kings county. All concur.

---

### SHERIDAN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

INJURIES TO CAR REPAIRER—CONTRIBUTORY NEGLIGENCE—RULES.

The rules of a railway company required employés to take the time necessary for avoiding danger, and to see for themselves, before undertaking any work, that the equipment provided therefor was in proper condition; that, when car inspectors were at work on a car, a blue flag should be displayed at the end of it, and cars displaying such signal were not to be coupled to. A car repairer, who, on accepting employment, had agreed to comply with the rules, went to work under a car without first displaying the required signal, on his own motion, there being no foreman, and while under it was injured by an engine being backed against the car. When working on the track in question, it had been customary for employés not to display any signal, though it was always displayed on other tracks, and the repairer testified that he had never been told that signals were required to be displayed on that track. Held, that the repairer was guilty of contributory negligence.

O'Brien and Patterson, JJ., dissenting.

Appeal from trial term, New York county.

Action by Robert W. Sheridan against the Long Island Railroad Company for personal injuries. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

W. C. Beecher, for appellant.

Herbert C. Smyth, for respondent.

INGRAHAM, J. On March 2, 1895, the plaintiff applied to the defendant for employment as a "helper on the track" by a written application which contains the following clause:

"I do hereby agree, as a condition of my employment, to obey strictly all the rules and regulations of the Long Island Railroad Company or the New York & Rockaway Beach Railway Company, now in force, or that may be issued from time to time, for the government of its employés. * * * I also certify that I can read and write the English language; that I personally filled out this application, and I make the same subject to the terms of the Employés' Agreement, hereto attached.

"[Signed]                       Robert W. Sheridan."

Attached to this application was the "Employés' Agreement," also signed by the plaintiff, which contains the following clause:

"It is expressly agreed by all employés of the Long Island Railroad Company and of the New York and Rockaway Beach Railway Company, in consideration of their employment, that the rules and regulations printed in the rule book of said companies, as now in force, and as they may be amended from time to time, shall be, and they are hereby, made binding on each of said employés, as well as all orders, verbal or written, issued from time to time by the companies, their officers, or heads of departments. And all applicants for employment and all employés expressly agree to comply with all such rules and regulations, and to obey all such orders promptly."

Upon this application the plaintiff was employed by the defendant, and went to work on June 1, 1895. He continued in the employ of defendant, inspecting and repairing cars upon the tracks of the defendant company at its depot in Long Island City, and was under the car inspector, Faber, or his assistant, Rutan. There was no foreman attached to the gang with which the plaintiff worked, which consisted of three or four men of the same grade. The plaintiff did not look to either of the other men for instructions, but testified that every man did his own work. "There was no foreman. No one of us three took any charge of the work in the absence of the foreman. Every one had to help himself." He further testified that when they had cause to change the wheels on a car they would first jack up the body of the car until they lifted the car off the axles. "No particular man took charge of the jacking. Whoever was first there would attend to that part of it." Clavin, one of the men working with the plaintiff, called as a witness for plaintiff, testified that the plaintiff had worked from the 1st day of the month with his gang; that there were two or three or four men in the gang; but that it was not a fact that one of the men took charge of the gang, or acted as foreman. On the 12th day of June, about 10 o'clock in the morning, the plaintiff was at work repairing a car which was on track No. 3, a side track upon which cars were placed when needing to be repaired, when Rutan,

assistant car inspector, ordered him, with Clavin, to put new wheels on car No. 227, which was on track No. 4, called the "wheel spur track." The plaintiff and Clavin went together to this car, followed by Rutan. Clavin reached the cars first, when he found the car upon which the new wheels were to be placed attached to another car. Clavin went upon the platform of one of the cars to get the riders between the two cars apart. Sheridan (the plaintiff) then came along, and went underneath the car with a bar to raise the car so that Clavin could get the riders apart. While Clavin was thus upon one of the cars, attempting to separate them, and Sheridan was underneath one of the cars, an engine bumped up against the car attached to the one that the men were at work upon, and the result was that Sheridan's hand was injured so that it had to be amputated, and it is to recover for this injury that this action is brought. No flag was placed upon the car, nor was any notice given, either by Clavin or the plaintiff, of the fact that they were working at the car. Nor does it appear that the engineer in charge of the engine had any reason to apprehend that any of the men were in a situation of danger when he backed his engine up to attach it to the car to be removed. Neither the plaintiff nor Clavin seems to have been engaged in the work of repairing the car when the accident happened. At that time they were endeavoring to separate the two cars so that one would be removed, leaving the car to be repaired upon this track in such a position as would enable the men properly to repair it. While the plaintiff had been but 12 days in the employ of the defendant, he had been working for 2 or 3 years in the employ of other railroad companies; a part of the time as conductor, and a part of the time in repairing cars. He had been engaged in the latter capacity by the Union Railway Company for 1½ years. The situation in which the plaintiff had thus voluntarily placed himself was one the danger of which was apparent to any one in the ordinary possession of his faculties. It did not require an expert trainman or an experienced railroad man to appreciate the fact that it was a dangerous position to get under a car standing on a side track, and that a man in that position, if the car should by any means be moved, would be injured. The plaintiff was not directly ordered by any of the responsible officers of the railroad company to place himself under the car. He did it voluntarily, with the danger apparent of a serious accident happening in case the car under which he had placed himself was moved by any other car or engine coming up against it. When the plaintiff went under this car, according to the evidence, Clavin was already upon the car. If it was the duty of any of the employés of the defendant to give any signal to show that any one was under the car, or in a position in which he could be injured by the car moving, it was the duty of the plaintiff to give such signal; and, if it was the negligence of any one that caused the accident, it was the negligence of the plaintiff in failing to give such signal. The plaintiff certainly was not required to go under this car, either by the work which he had to do or by any orders which he had received, until he had given the necessary signal to make his position reasonably safe; and it is difficult to see how a man who thus voluntarily places himself in a position

of danger, without the use of any safeguard to prevent an accident the danger of which was apparent, could be said to have established that he was free from contributory negligence. To protect its employés in the discharge of their duties, the defendant had established a book of rules, which were in force at the time of this accident; and this book, being the one referred to in the "Employés' Agreement" signed by the plaintiff, contained the following rules:

"Rule 29. Blue is a signal to be used by car inspectors." "Rule 35. A blue flag by day and a blue light by night, placed on the end of a car, denotes that car inspectors are at work under or above the car or train. The car or train thus protected must not be coupled to or moved until the blue signal is removed by the car inspector. When a car or train standing on a siding is protected by a blue signal, other cars must not be placed in front of it, so that the blue signal will be obscured, without first notifying the car inspector, that he may protect himself." "Rule 204. Every employé is required to exercise reasonable care to avoid injury to himself or others, and to see for himself, before using them, that the machinery, tools, and materials provided for him, or subject to his management or use, are in proper condition for the intended employment." "Rule 206. The company desires its employés not to incur risks from which they can protect themselves by personal care and by the exercise of their own judgment, and enjoins them to take, in all cases, the time necessary to safely do their duty, whether acting under the direction of their superiors or not. The subjection of themselves or others to unnecessary risk will be cause for dismissal from the service."

These rules clearly prescribe a course of conduct for the car inspectors or their helpers by which notice can be given to all other employés of the company that a person was underneath a car in a position of danger. The plaintiff, as well as the other employés of the company, was enjoined to make use of these appliances and methods by which the risk attending the position in which he was obliged to place himself would be avoided; and the company enjoined the plaintiff to take the time necessary safely to do his work, whether acting under the direction of his employers or not. It was in consequence of the neglect to comply with these rules that the injury to the plaintiff occurred; and where it was made the duty of the plaintiff to cause the proper signal to be given before placing himself under the car in a position of danger, and he neglects to give such a signal, and receives an injury, the inference necessarily follows that the plaintiff's negligence was the primary cause of the accident. The plaintiff testified on the trial that he did not know whether there was anything upon these cars to give signals, that he did not know anything about any signals on that switch track, that nobody told him of any rule of signals as to that track before the accident, and that he had never seen these blue signals used. Other witnesses who were called by the plaintiff testified that the men when working upon this "wheel spur track" had not been in the habit of complying with this rule of the company by placing a blue flag or blue light upon the cars upon this track when they were engaged in repairing them. Clavin testified that he had never known of a blue flag or blue light being placed upon a car upon this particular track; that he had seen blue flags and blue lights used upon the main track, but had never know them to be used upon this switch track. He, however, said

that he knew of the rule which required a blue flag or light to be used upon a car when it was undergoing repair; that he had been told by Mr. Faber, the chief of the department in which he worked, that he was required to use a blue flag by day and a blue light by night in these cars, and that he understood perfectly that there was a rule of the company which required the use of a blue flag by day and a blue light by night when repairs were being made; and the other employés of the company who were called as wit- nesses also testified that they knew of the general rule, and that the rule was generally complied with, except upon this particular track. The witnesses for the defendant testified that the rule was complied with generally upon this track. The rule, however, ex- isted, was general in its form, and its requirements were binding upon all employés of the company. To that rule the plaintiff sub- scribed, and by it, in his contract with the defendant, he agreed to be bound. He could read and write the English language, and vol- untarily assumed, upon entering the employment of the defendant, the obligation to abide by and enforce these rules of the company, as printed in their rule book. He did not testify that he never saw or read that book, or was not familiar with its contents; nor is there any excuse offered for his failure to inform himself as to the rules and regulations which he had voluntarily made binding upon himself. Having signed this agreement, it seems to me that he was bound by the rules as promulgated by the company, that he subjected himself to the obligation to observe and enforce those rules, and that for an injury sustained by him in consequence of his violation of the rules the company is not responsible. Violette v. Rice (Mass.) 53 N. E. 144.

This is not a case where the liability of a corporation to one of its employés is sought to be avoided because the injury was caused by the failure of a fellow employé to obey a rule of the company formulated for the protection of its employés, but which had been neglected or violated by the employés with the knowledge or ac- quiescence of the corporation. In this case the rules of the com- pany required the plaintiff, as much as Clavin, or any other of its employés, to provide this blue flag or signal before the plaintiff exposed himself in a position underneath the cars. Assuming that prior to the time of this accident the defendant had been negli- gent in not enforcing this rule as to this particular track, when the plaintiff signed this agreement he voluntarily agreed to comply with and enforce the rules printed in the rule book of the com- pany, and to be bound by them. The fact that the company had prescribed rules for his conduct was expressly brought to his at- tention, and it was his duty to familiarize himself with and to obey them. The rules having been thus brought to his attention, he could not evade his obligation to the company to comply with and enforce them, and to be bound by them, by neglecting to acquaint himself with them, and throw upon the company an obligation for injuries sustained by him in consequence of his violation of them. The failure of the other employés of the company to comply with these rules could not relieve him from the obligation assumed by

him to comply with and enforce them; and if he failed in this duty voluntarily assumed by him when he entered into the employ of the company, and in consequence of such failure he was injured, it was his negligence, and not the negligence of the defendant.

An examination of the cases relied on by the plaintiff will show, I think, that none of them are applicable to a case where it was the duty of an employé who was injured to do the act the failure to do which caused the injury. Thus, in Coppins v. Railroad Co., 122 N. Y. 560, 25 N. E. 915, the accident was due to the negligence of a switchman, who, instead of attending to his switch, left his post for the purpose of taking a meal, and it was in consequence of his absence from his post of duty that the accident happened which caused an injury to the plaintiff. So, in Wall v. Railroad Co., 54 Hun, 454, 7 N. Y. Supp. 709, where the action was brought to recover damages for the killing of the plaintiff's intestate through the negligence of the defendant in retaining in its employ, and in failing to discharge, a servant who caused the accident, and who was habitually negligent in the performance of his duties. The liability in that case was placed upon the failure of the corporation to dismiss such employé after it had knowledge of his habitual negligence. In Whittaker v. President, etc., 126 N. Y. 544, 27 N. E. 1042, a fireman was killed by a collision between the engine upon which he was employed and an engine left standing on the main track of the defendant road in violation of the rules of the company by its engineer. In Cameron v. Railroad Co., 145 N. Y. 400, 40 N. E. 1, the accident which caused the death of the plaintiff's intestate occurred through the negligence of Norton, a fellow brakeman, who had left a switch open and unguarded, and had thus violated a rule of the company requiring that "whoever opens a switch shall remain at it until it is closed, or until he is relieved by some competent employé." Norton had testified at the trial that for about four months prior to the accident he had been accustomed to habitually violate the defendant's rules by leaving the switch open and unguarded, but it was held that under such circumstances it was not negligence on the part of the defendant to fail to detect Norton's delinquencies; the court saying:

"The negligent acts of Norton took place while he was working on the same train, and in a like capacity, with the deceased. It is more reasonable to suppose that they were done in his presence, or under his observation, than to imply knowledge on the part of the defendant; and, if it can be said that the deceased knew of these omissions of duty on the part of his fellow brakemen, and failed to report them, he might be regarded as voluntarily assuming the risks and dangers incident to his association in a common work with a careless or incompetent co-servant."

This conclusion is sustained by the case of La Croy v. Railroad Co., 132 N. Y. 570, 30 N. E. 391. In that case the accident was caused by the failure of a brakeman to inspect the brakes upon the cars before taking the train down a steep grade. The plaintiff knew that the defendant had provided a book of rules requiring the brakeman to test the hand brakes before starting, and to see that they were in a proper condition, and worked easily. Before starting this train, the brakemen, of whom the plaintiff was one, did not test the hand

brakes. The plaintiff testified that he had not been furnished with a book of rules, that he was not requested or required to read it, and that he did not, in fact, read it. The court say:

"But the question we are considering is not whether the defendant properly promulgated the rules as to the plaintiff, but whether they in fact came to his knowledge; and we think the evidence permits of no other inference than that they did. As the failure to obey the rules occasioned the accident, the plaintiff, whose neglect was, in part, at least, responsible for it, cannot require the defendant to compensate him for his injuries."

It seems to me that this applies to the case now under consideration. Here the attention of the plaintiff had been specifically called to the fact that the company had established a book of rules, and the plaintiff had expressly agreed to be bound by them; and certainly the fact that the plaintiff failed to make himself acquainted with the rules by neglecting to read them does not excuse his failure to observe them; nor does the failure of his co-employés to enforce them justify him in violating his agreement with the company, and himself neglecting to comply with them.

As was said by the court in the case of Cameron v. Railroad Co., supra:

"If it can be said that the deceased knew of these omissions of duty on the part of his fellow brakeman, and failed to report them, he might be regarded as voluntarily assuming the risks and dangers incident to his association in a common work with a careless or incompetent co-servant."

The case of Bruen v. Uhlmann, 30 App. Div. 454, 51 N. Y. Supp. 959, is also in point. In that case the plaintiff's intestate was engaged as a track repairer by the defendant. While at work upon the tracks of the Brooklyn Elevated Railroad, the deceased was struck by an engine of the defendant, and killed. The evidence showed that the rules of the company required that the workman engaged in repairing the track should place a green flag at a reasonable distance from the point at which the work was being performed. The plaintiff's evidence showed that the deceased had, on the day of the accident, gone to work on this portion of the road without such signal. The court, in sustaining a dismissal of the complaint, say:

"The evidence of the plaintiff not only failed to show absence of contributory negligence, but it affirmatively established a degree of negligence on the part of the deceased which must defeat recovery. It is a well-established rule that the degree of care must be commensurate with the danger; and if the deceased, familiar as he was with the dangerous situation in which he was placed, chose to neglect the precautions prescribed by the rules of the defendant, which, if they had been observed, were entirely adequate to protect him, there is no rule of law which will permit the defendant to be charged with damages because of his death. * * * It is absurd to contend that the defendant is in any way liable where the accident is due to the neglect of the employé himself of these rules and regulations adopted for his own safety, and of that degree of prudence which the obvious danger of the employment demands. * * * Having neglected to display these flags, he assumed the hazards incident to the employment in the presence of such neglect, and the defendant cannot be charged with damages under such circumstances."

In the case of Moeller v. Railroad Co., 13 App. Div. 469, 43 N. Y. Supp. 605, a rule had been adopted quite similar to the one adopted by the defendant in this case, which required a red flag by day or a red light by night to be placed upon a car when repair men were

at work underneath or about the car or train. In that case the plaintiff's intestate and one Young went to repair the brake on a defective car, and did not put up the red flag on that occasion, because, as Young testified, "we thought it was such a short job, there wouldn't be any need of it." The court say:

"At the time of the accident Young and the intestate were engaged in a joint act in repairing this brake, and, in case the intestate knew of the rule, he was negligent. But, assuming that he did not know of it, Young did, and his negligent disobedience of rule 75 was the cause of the accident. Thus it appears that the accident was caused by the joint negligence of the intestate and of Young, or was caused by the negligence of Young, who was the intestate's fellow servant, which defeats the plaintiff's right to recover."

In this case, as the plaintiff had, by his agreement with the company, expressly obligated himself to be bound by the rules of the company, by the rules it was his duty to display this flag upon the car before placing himself in a position of danger under it; and, as the accident was the result of his negligence in thus disobeying the rule of the company, which he was bound to enforce, for the injury caused by this accident the defendant is not liable.

It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except O'BRIEN and PATTERSON, JJ., dissenting.

O'BRIEN, J. (dissenting). This action, brought to recover damages for injuries suffered by the plaintiff resulting in the loss of his left hand while he was employed as a car inspector's helper in the defendant's railroad yard, was before this court on a former appeal (27 App. Div. 12, 50 N. Y. Supp. 215), in which many of the facts are stated. The plaintiff went to work for the defendant on the 1st of June, 1895, and on the morning of June 12th in the same year he was directed to assist in taking off the wheel of a car on what was known as a "wheel spur track," and while so engaged under the car in prying up the wheel with a bar an engine backed down on the track, and the plaintiff's hand was crushed so that amputation was necessary. Upon entering the employment of the company, the plaintiff agreed to be bound by its rules, one of which, introduced in evidence, provided that, when car inspectors are at work, a blue flag by day and a blue light at night shall be displayed as a warning. Such signal was not used at the time of the accident, and the contention of the appellant is that, even if it be held that the plaintiff did not know of the rule, yet from the testimony of the car inspector, Clavin, whom he was assisting in the work, and who stated that he was entirely familiar with the rules of the company requiring a signal to be used when cars were being repaired, it appeared that the accident, if any, was caused by the negligence of Clavin, a co-employé, for which the defendant was not liable. It is no doubt the settled law that when one servant is injured solely through the negligence of a fellow servant the master is not liable. It is equally well settled, however, that, if the negligence of the master contributes to produce the injuries, a recovery for such is not defeated by reason of the negligence of a fellow servant. This was the law as expressed in

Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915, where a brakeman was injured by the derailment of his train, due to a misplaced switch. The switch had been misplaced by a fellow servant named Schram, who had violated a rule of the company requiring the switch to be closed and locked for 20 minutes prior to the arrival of a passenger train. A verdict having been recovered on the ground that Schram had frequently violated such rule, which violation was known, or ought, with reasonable care and attention, to have been known, by the defendants, the court of appeals, among other things, in the course of the opinion said:

"If the evidence in this case justifies the conclusion that the engineer of the passenger train was negligent in not observing the target at the misplaced switch, or in running his train at a high rate of speed past the station in the absence of signals that the track was safe, that fact of itself is not available as a defense, if negligence was established on the part of the defendant, as the law is too well settled upon principle and authority to be now questioned that *negligence of a servant does not excuse the master from liability to a co-servant for an injury which would not have happened had the master performed his duty.* * * * This involves an inquiry into the rules that had been adopted by defendant to insure the safe passage of trains through the St. Johnsville yard. and over the switches in question, and whether the violation of these rules in this particular instance can be charged against the defendant as an act of negligence on its part. * * * The plaintiff seeks to so charge it by proof that Schram was in the habit of frequently neglecting to be at his post and signal passenger trains, and was in the habit of frequently leaving the yard, and going to his supper, about the time the train in question was due at St. Johnsville, and that his habits in that respect were known, or ought, with reasonable care and attention, to have been known, to defendants. If the evidence justified this conclusion, the defendant's negligence was established. No distinction exists in principle between permitting the use of defective machinery and permitting employés to habitually disregard the safeguards that have been provided to insure the safe running and operation of trains."

And in Whittaker v. President, etc., 126 N. Y. 544, 27 N. E. 1042, the court says:

"The proof showed that the accident occurred in the nighttime, in the defendant's railroad yard at Quaker street, through a collision between an incoming freight train, upon which the plaintiff's intestate was employed as fireman, and an engine left standing on the main track of defendant's road, in violation of the rules of the company, by its engineer, while he was waiting in the office, near by, for orders. It is claimed by the defendant that the presence of the stationary engine on the track was due to the fault of its engineer, who placed it there in contravention of a rule of the company forbidding its employés from placing engines and cars on the main track except under orders. It is conceded that this engineer had no orders to go upon the main track with his engine, and it is therefore claimed that, the accident having occurred through the fault of a co-servant, the company is not liable. There was evidence in the case to show that this engineer and others, for a period of at least one year. had been in the habit of disobeying this rule of the company, and violating its requirements, by placing their engines upon the main track at Quaker street, and leaving them there while awaiting orders. This practice had been so frequently indulged in, and had continued for such a length of time, that the jury were justified in finding that it had come to the knowledge of the railroad company, and was pursued by their acquiescence, or as the result of a want of vigilance in supervising the management of their road. A railroad company does not discharge its whole duty to the public by merely framing and publishing proper rules for the conduct of its business and the guidance and control of its servants, but it is also required to exercise such a supervision over its servants and the prosecution of its business as to have reason to believe that it is being conducted in pursuance of such rules. * * * The rule in refer-

ence to constructive notice is well expressed in the case of Hilts v. Railway Co., 55 Mich. 437, 21 N. W. 878, as follows: 'A master who retains an incompetent servant in his employment after knowledge comes to him of the unfitness of the servant for the service in which he is engaged, or of whose unfitness he might have known by the exercise of due diligence or ordinary care, is liable for injury to another servant, caused by the negligent acts of the incompetent servant.'"

These cases are to be distinguished from Corcoran v. Railroad Co., 126 N. Y. 673; Moeller v. Railroad Co., 13 App. Div. 467, 43 N. Y. Supp. 603, and Davis v. Railroad Co., 1 App. Div. 178, 37 N. Y. Supp. 157, where the defendant companies had suitable and adequate rules, which were known either to the persons injured or to the fellow servants working with them, and in which the defendants did not permit the rule to be infringed or disregarded, and in neither of which cases was it claimed that the defendant company knew, or ought to have known, of any violation of such rules.

The plaintiff seeks to place the liability of the defendant upon the principles enunciated in the cases from which we have quoted by showing that the rule here in question had been habitually and totally disregarded upon the wheel spur tracks with the knowledge and acquiescence of the defendant. It was upon this theory that the learned trial judge permitted the case to go to the jury, and it remains for us to consider whether the evidence justified that disposition of the case. It must be assumed that, while there is no direct evidence that the plaintiff knew of the rules, yet, having agreed to be bound by them, he would be affected by any proper and adequate regulation which the company was enforcing for the management of its business and the protection of its servants. It is not disputed that the rule required that employés, while making repairs, should display a blue signal, and that it was enforced generally in the yard where this accident occurred; but the claim is made that it was never enforced on the wheel spur tracks, and that the failure to enforce it, or, see that it was enforced, had continued for a period so long that the defendant, through its representatives, knew, or ought to have known, that it was habitually and persistently disregarded. The plaintiff himself testified that he had only worked for the defendant 12 days upon the wheel spur, and that there were no signals used upon the wheel spur tracks, and that he did not know anything about signals on that wheel spur track; that no one told him about any rule or signals, nor was the matter ever mentioned to him that there was a rule which required a blue flag by day and a blue light by night. He also testified that during the 12 days he was at work for the defendant he had not worked upon any other tracks in the defendant's yard. Clavin, who was working with the plaintiff at the time of the accident, and through whose negligence in failing to employ a signal the defendant insists that the accident was caused, who had been employed on the spur track for 13 months before the accident, and was one of a "gang" longest in the defendant's employ, and had such experience that he was put in charge of the "gang," testified that there was no flag or signals used on the wheel spur tracks, nor had he ever known them to be; that he was instructed to use them out in the freight yard, but none were furnished for use

on the spur track, and he received no orders to use them. This may or may not explain his written statement, made just after the accident, that he "did not think it necessary to use the signals." He further testified that Mr. Rutan, a car inspector who was present at the time of the accident, when concededly no signals were used, had never told him to use signals on the spur tracks, although he was with him there three or four times a day for six or eight months; that Mr. Donnelly, the yard master, had been there five or six times a day for eight months, and had said nothing about using signals; that his particular "boss," Mr. Faber, chief inspector, had also seen him there for the same period without mentioning that signals were to be used there; that he understood the rule, but received no instructions as to the spur tracks, and that it had been the custom to signal by conversation. Another witness (Pope) testified that he worked for the company from 1891 to 1896, and was in the yard as brakeman and drillman, and was often at the spur track, but had seen no signals used on that track until the day of the accident. John M. Doll, who had been five years employed, but had left in July, 1895, and who had been employed a good deal of his time in the yard, averaging, as he states, three or four trips a day over the spur tracks, testified that prior to June 12th, he had never seen blue signals there, although he saw the "bosses" often. Similar testimony was given by Henry Gebhardt, who had worked for the defendant two years, and left in 1894. On the other hand, we have the testimony of Faber, Rutan, and Donnelly that they did not notice that the men did not use the blue signal on the wheel spur track; Rutan stating that he had not known of men disregarding the rule, but, when asked as to the wheel spur, he was not very positive as to that particular track. Nor can we say that the denials made by Rutan and Donnelly, considered in connection with the whole testimony, were of such a positive character as to justify the conclusion that the plaintiff's testimony that the signals were not used was entirely overborne. In addition to these, there was one other witness of the defendant, who testified that he had worked as a car inspector for the defendant during 1895, and previous thereto, and that he used a blue flag upon the wheel spur tracks when making repairs.

We have, then, on the part of the plaintiff a great number of witnesses who positively state that they did not use the signal when making repairs, and did not observe that anybody else used it while so employed. It is also fairly inferable that, with the persons named having charge of the men constantly about the yard, this could not have been done without their attention at some time being called to the fact that the rule was not being observed. In other words, the plaintiff's evidence is fairly susceptible of the view that, with their presence in the yard, and their opportunity to observe the manner in which the rule was enforced, it was habitually disregarded, and allowed to fall into disuse. Under the doctrine, therefore, of constructive notice, if such evidence is not sufficient to prove actual notice as referred to in the cases cited, while the negligence of Clavin, a fellow servant, in not observing the rule and using the signal must be conceded, it was a question, notwithstanding such negligence,

for the jury to determine whether the rules framed by the defendant for the conduct of its business and the guidance and control of its servants with respect to using signals on this particular wheel spur track had or had not been so persistently neglected for a period of time sufficiently long to justify the inference that the defendant was wanting in care and diligence in enforcing such rule. Differently and broadly stated, the question presented for the consideration of the judge upon the motion to dismiss the complaint on the plaintiff's evidence, and again at the end of the entire case, was whether, in a case where the defendant had made proper rules of general application to the whole road, but which all of the employés except one, without express permission from the defendant, persistently neglected to observe as to a single short set of spur tracks, can the master be held liable if one of the men is injured because of failure on the part of a fellow servant to observe a written rule which practically all the employés were permitted to disregard for a long period? We think the answer is dependent upon the inference to be drawn from testimony of the plaintiff as to whether it tends to show that the rule was not enforced upon this particular track for so long a time, and so habitually, that the defendant, or those representing it, knew, or ought to have known, that it was not being observed. It cannot be that the mere making of rules is alone sufficient. It is the duty of the company to make them known, and see that they are enforced; or at least the duty devolves upon it to exercise such care and supervision as to prevent the rule being persistently disregarded. It will be seen, therefore, that we have reached the conclusion that upon the evidence adduced it was properly a question for the jury; and their verdict reached by awarding a sum which, considering the nature and extent of the injuries, cannot, as matter of law, be regarded as excessive, will require the affirmance of the judgment, unless the exceptions taken to the charge of the court and to requests as charged or refused are good.

The first error assigned is to that portion of the main charge where the learned trial judge, in stating what it was necessary to prove, said that, before there could be a recovery, the plaintiff must show, among other things, "that the defendant or its servants were guilty of some negligence which was the sole cause of the accident and of the resulting injuries." It is insisted that the court fell into the same error that was the cause for reversal on the previous appeal (27 App. Div. 10, 50 N. Y. Supp. 215); but in this we think the counsel for the defendant is mistaken. Upon the former trial the language was that, "if the jury find that the accident was caused wholly by the negligence of the defendant's servants, and the plaintiff was free from negligence, he was entitled to a verdict." While there is similarity in the language employed, the distinction lies in the fact that upon the former trial it was in no way qualified after the court's attention had been called to it, and it therefore tended to mislead the jury to the detriment of the defendant. There is a difference, besides, in the way in which the subject was presented. Here the exception was taken in a blind way, without the court's attention being called to the point

of the objection, after the entire charge, and after a great many requests had been granted or refused; and that the court was not apprised, and was willing to obviate the objection if it had been pointed out, clearly appears from the judge's language when the objection was made: "I coupled that, certainly, with the absence of negligence on the part of the plaintiff, and it was an oversight if I did not do so." Thus we have an intimation from the court that it desired to state the rule of law correctly; and the defendant did not point out in what other respect the charge as made was erroneous. Furthermore, the language to which exception was taken occurs at the beginning of the charge, and it appears by what followed that the learned court went over the whole ground in detail, and placed clearly before the jury the theory upon which, if any, the plaintiff was entitled to recover; and this could not possibly have misled. Such theory, and the law applicable thereto, he stated as follows:

"If a rule like this is promulgated, and reasonable and proper care is exercised for its enforcement, and those having charge of these matters call the attention of the servants of the defendant to this, and require them to obey it when they see it is neglected, then it has fully performed its duty in that respect, although there may have been occasional neglect by some of the defendant's servants, even if the servant is not at once discharged from the employment of the defendant. If the injury was occasioned through the negligence of a fellow servant in disobeying a rule which the company used reasonable care to enforce, then there can be no recovery in this case, because it is a well-settled rule of law that, where an injury arises by reason of the carelessness or the negligence of a fellow servant, then the fellow servant cannot recover of the defendant corporation. * * * If you believe the plaintiff had no knowledge of the existence of any rule in question, and if you further believe that the rule had been habitually disregarded by the plaintiff's co-employés upon the wheel spur for such a length of time that the defendant's officers whose duty it was to employ and discharge defendant's employés knew, or ought to have known in the exercise of reasonable supervision of the defendant's business, that the rules were habitually disregarded; and if you further believe that the plaintiff was free from negligence, and that such violation of the rule by the defendant's co-employés was the cause of the accident to the plaintiff,— then the plaintiff is entitled to recover. The rule which was enacted by the defendant company was intended by the company, and understood by the men, to apply to all parts of the company's road and tracks. Unless you find that there was some special exception in the case of this spur track, either by long-continued neglect to observe the rule upon that particular track, or for any other reason, you find it was not enforced upon that track, and ordinary care was not taken for its performance for a long time, then you may find that that rule had been waived in regard to that particular track."

The learned court then proceeded to specify the details that should be present in order to constitute a waiver on the part of the defendant, and it is impossible to reach any other conclusion than that in a clear and full charge the questions at issue were fairly presented to the jury. Exceptions were taken to refusals of the court to grant the defendant's requests to charge the jury as to what evidence was given by witnesses. These were properly ruled upon referring them to the recollection and memory of the jurors.

Our examination of the main charge, and the manner in which the requests were treated, satisfies us that, if there was sufficient evidence to present the question of the defendant's liability to the jury, then every right of the defendant was carefully guarded and

protected by the court.   We are thus brought back to what is really the crucial question on this appeal, and which was presented on the motion to dismiss the complaint, namely, whether the evidence was sufficient to justify a submission to the jury upon the plaintiff's claim that, although general rules had been made many years prior to the accident relating to all the tracks, the defendant knew, or from a frequent infringement should have known, that the rules were not observed on the wheel spur track.   The court correctly stated the principle of law to be that—it being conceded that there were rules—the mere failure of employés occasionally to disregard them would not render the defendant liable, but that the liability must rest upon the inference, to be drawn from the testimony of those to whom the defendant had intrusted the enforcement of the rules, that they had been permitted to fall into disuse, and to be persistently and habitually violated for a long period of time.   Seemingly it is as negligent for the defendant to be careless and indifferent in the enforcement of proper rules as it would be to neglect to make them; and the duty that rests on it is not fully discharged by merely formulating proper rules, for, unless insisted upon, they are useless.   And, although not bound to see that the rules are never violated, the defendant is not free from blame if no steps are taken to have them ever observed.   We think that the question of the defendant's liability was properly submitted to the jury, and that with their verdict we should not interfere.

The judgment should be affirmed, with costs.

PATTERSON, J., concurs.