## LARKIN v. NEW YORK TELEPHONE CO. et al.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. MASTER AND SERVANT ⬿243—MASTER'S LIABILITY—VIOLATION OF RULES.

     A splicer in the employ of a telephone company, who knew that a defect he was about to repair was a blow-out attended with possibility of great danger, and who violated the master's known rule requiring him to wear rubber gloves, where it did not appear that he could not have done his work while wearing such gloves, was guilty of a disobedience of the master's rule, defeating any right of recovery for his death from a shock.

     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 682, 759–775; Dec. Dig. ⬿243.]

2. MASTER AND SERVANT ⬿278—LIABILITY FOR INJURY—WAIVER OF RULE.

     Where a splicer in the employ of a telephone company dealt with emergencies at different and unforeseen places and worked alone, free from observation or inspection, and the master had no reason to suppose that, rather than glove his hands, as required by a rule made for his protection, he would disregard the rule to the peril of his life, there was no proof of the master's waiver of the rule.

     [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971–972, 977; Dec. Dig. ⬿278.]

Appeal from Trial Term, Nassau County.

Action by Delia Larkin, as administratrix, etc., of Michael Larkin, deceased, against the New York Telephone Company and another. From a judgment in favor of the plaintiff, and from an order denying defendants' motions for a new trial, defendants appeal. Judgment and order reversed, and new trial granted.

See, also, 158 App. Div. 414, 143 N. Y. Supp. 578.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and RICH, JJ.

John C. Robinson, of New York City, for appellant Queensborough Gas & Electric Co.

Alexander Cameron, of New York City (Arnold W. Sherman and Benjamin F. Briggs, both of New York City, on the brief), for appellant New York Telephone Co.

John M. Ward, of New York City (Arthur D. Kinney, of New York City, on the brief), for respondent.

JENKS, P. J. We now have the record of the new trial granted herein (158 App. Div. 414, 143 N. Y. Supp. 578), and this discussion should be read with reference to our former opinion. Of course, the plaintiff strove to overcome the difficulties of the first trial. She can-

not be criticized, in that such striving was sinister, either by suppression or supply of proof. She contends that the former witnesses recalled on this trial did not change their testimony, but amplified it. There are nine of such witnesses, and three new witnesses. One witness called by the plaintiff on the first trial was not called by the plaintiff on this trial, but was put upon the stand by the defendants.

Upon the former appeal, we said that the faults of the plaintiff's intestate, which, inter alia, precluded an affirmance, were the deliberate disobedience of rules and the omission of well-known precautions. We specified his failure to make a test for safety and the neglect to wear rubber gloves. The plaintiff now adduces proof that it was the duty of the "trouble hunter," who in due course preceded the intestate, to make a test and to remove any danger thus detected. Her theory is that, if the trouble hunter fell short in that duty, then there was presented the question of a reasonably safe place to work, and that the intestate's omission to make a test but presented a question of his due care, and not of his violation of a duty cast upon him. It seems to me that upon such proof there was a question for the jury. See Downey v. Finucane, 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307, opinion per Cullen, C. J., and authorities cited, and Johnston v. Syracuse Lighting Co., 193 N. Y. 592, 86 N. E. 539, 127 Am. St. Rep. 988. But, in view of our disposition of this appeal, it is needless to determine whether the proof upon these features of the case was sufficient to uphold the verdict.

[1] The intestate understood that the defect was a "blow-out," which is attended with the possibility of great danger. He violated a rule, brought home to him, that required the use of rubber gloves. The plaintiff would exculpate her intestate by the contentions, first, that he could not do his work with hands so gloved as to protect him; and, second, that the defendant who was the intestate's master had waived the rule. There is testimony to support the first proposition. But even if such testimony is to be fully credited, yet it did not establish clearly that the hands, when gloved, could not use a hook or some similar article in a part of such work, and it must be remembered that the proof permits the inference at least that the intestate was shocked at a stage of work when he was using instruments or a scissors. I think, then, that this proof did not justify the absolution of the intestate from negligence in the omission to use rubber gloves at the time he received the fatal shock. See Cullen v. N. S. M. R. Co., 114 N. Y. 45, 20 N. E. 831; La Croy v. N. Y., L. E. & W. R. R. Co., 132 N. Y. 570, 30 N. E. 391; Sheridan v. L. I. R. R. Co., 40 App. Div. 381, 57 N. Y. Supp. 1075.

[2] In our former opinion we held that there was not sufficient proof that the rule which required the precaution of rubber gloves had been disregarded, to the knowledge and consequently with the acquiescence of the master. The custom or usage of an habitual violation or disregard of a rule, upon which rests the doctrine of waiver by the master, is confined to the conduct of the master's employés. Labatt on Master and Servant (2d Ed.) vol. 3, p. 3011. The court told the jury that there was no direct evidence that the master knew that the

splicers never used gloves, but that if the splicers had done so for a long period the jury were to say whether the inference would be that the master must have known of such omissions. Several present or former employés of the master testify that they never knew of a splicer's use of gloves in doing this kind of work. The periods of their observation, respectively, were sufficient, if mere lapse of time were always the test. But, as was said in Cameron v. N. Y. C. & H. R. R. R. Co., 145 N. Y. 400, 40 N. E. 1, it is not; but other considerations may well be of moment in determination of the master's knowledge and consequent acquiescence. It seems to me that in the case at bar, as in Cameron's Case, supra, it is pertinent to ask how was the master to know of the habitual violations of the rule? And the conditions which moved the court to exculpate the master from an imputation of negligence in Cameron's Case, supra, are, to my mind, fully as favorable in the case at bar. The intestate dealt with emergencies, due to accidents at different and unforeseen places along the lines of the defendant. The work at these places required him to ascend to the wires, and presumably to work alone and free from observation or inspection. There was no proof that there was, or that there could be, any opportunity for observation or inspection by the master to ascertain whether the servant, before he went about his work, put on the gloves required by the rule. When the master had made this plain and positive rule, which the servant must have known was to protect him from lethal danger, which was always possible in such work, had the master any reason to surmise that the intestate, rather than glove his hands, would disregard the rule to the peril of his life? My inquiry is along the line of that made by the court in Cameron's Case, supra. Without passing upon the other features of the case, I advise a reversal.

The judgment and order are reversed, and a new trial is granted; costs to abide the event. All concur.